98   437
99   408

98   437
120   591

98   437
s57ᴺᵂ 404
f131  ³645

THE KEWEENAW ASSOCIATION (LIMITED) v. SCHOOL-DISTRICT NO. 1 OF THE TOWNSHIP OF HANCOCK, AND WILLIAM F. MILLER, TREASURER OF HOUGHTON COUNTY.

*Schools and school-districts—Organization—Constitutional law—Taxation.*

1. The wisdom of the graded-school-district act is vindicated, and its validity determined, in *Stuart v. School-District*, 30 Mich. 69.
2. The regularity of the organization of a graded school-district, which has been in existence for 16 years, cannot be attacked in a suit to enjoin a sale of lands for delinquent school taxes.
3. Act No. 267, Local Acts of 1891, which provides that all lands in the township of Hancock, in Houghton county, not a part or portion of school-district No. 1 of said township, shall be attached to said school-district, is not in conflict with article 13, § 4, of the Constitution.
4. How. Stat. § 5052, subd. 6, which provides for the raising of money to build school-houses, and that no land shall be taxed for that purpose unless some portion thereof shall be within two and one-half miles of the school-house site, does not apply to a graded school-district.

Appeal from Houghton.    (Haire, J., presiding.)    Submitted on briefs December 14, 1893.    Decided January 9, 1894.

Bill to set aside certain school taxes, and to enjoin the sale of lands therefor.    Complainant appeals.    Decree affirmed.    The facts are stated in the opinion.

*Irving D. Hanscom,* for complainant.

*Dunstan & Hanchette,* for defendant school-district.

HOOKER, J. The complainant is a limited partnership association, owning a large amount of land in the township of Hancock, Houghton county. This township is about 27 miles long, averages nearly 8 miles in width, and is sparsely settled, except in and about the village of Hancock. The bill is filed to set aside the school taxes levied upon complainant's lands, and to enjoin a sale of such lands by the county treasurer for delinquent school taxes. All other taxes levied upon these lands were paid before the suit was commenced.

The records of the township and school-district do not show the organization of any school-district, but they indicate that school-district No. 1 had existed for many years. Up to 1869 it elected three officers, viz., moderator, director, and assessor, prescribed by the primary-school law. After that time it appears to have existed as a graded school-district. Six trustees managed its affairs for a time, and afterwards five, in conformity to the changed condition of the graded school law. In 1875 it built a school-house in the village of Hancock, costing about $30,000, of which $15,000 was made a bonded indebtedness, and the tax in question included a sum levied to pay interest upon, and a part of the principal of, this bonded debt. At times, as the necessities of the inhabitants required, school was taught in two other places in the township, one being nine miles from the village. These schools were all provided for and conducted by the officers of school-district No. 1, which appears to have been the only school-district in the township.

We think the evidence fairly sustains the proposition that this was a graded school-district, and was generally recognized to be co-extensive with the township, which

it might lawfully be, under the graded-school act (How. Stat. § 5132 *et seq.*), section 4 of which relieves such districts from the restriction to nine sections of land, as provided by section 5033. No attack is made upon the graded-school-district act, unless it be impliedly, and we will pass the subject with the remark that the opinion of Mr. Justice COOLEY in the case of *Stuart v. School-District*, 30 Mich. 69, seems to have set the question at rest. In an interesting review of the policy of the Territory and State, he vindicates the wisdom of that act, and determines its validity.

Finding, as we do, that a graded school-district has been in existence since 1875, assuming to be co-extensive with the township, and in the exercise of corporate powers, it would perhaps be sufficient to say that the regularity of its organization cannot be attacked in this proceeding. *Fractional School-District v. School Inspectors*, 27 Mich. 3; *Clement v. Everest*, 29 Id. 19; *Stuart v. School-District*, 30 Id. 69; *Stockle v. Silsbee*, 41 Id. 615; *Jaquith v. Hale*, 31 Id. 430; *Lord v. Every*, 38 Id. 405.

Much of the land in the township was new and sparsely settled, and difficulty was experienced in the collection of taxes, which in some, if not all, years, were spread upon all of the taxable property in the township. This led to the passage of Act No. 267, Local Acts of 1891, which provided that all land in the township not theretofore a part of school-district No. 1 should be attached to said district. This law is alleged to be unconstitutional, upon the ground that it violates article 13, § 4, of the Constitution, which provides that—

"The Legislature shall, within five years from the adoption of this Constitution, provide for and establish a system of primary schools, whereby a school shall be kept without charge for tuition, at least three months in each year, in every school-district in the State; and all instruc-

tion in said schools shall be conducted in the English language."

It is argued that after such system was established by the Legislature it could not be lawfully abolished, or such changes made as would impair it, by excepting certain localities from its provisions, which it is said this act does.

Article 13 establishes a department of public instruction, and provides a primary-school fund. It directs the Legislature to establish a system of primary schools throughout the State. This the Legislature did by the adoption of laws pointing out the method of creating and altering districts, prescribing methods of raising money for the support of schools, and of choosing officers to manage school affairs. It has been already shown that the graded-school act is to be considered valid, and that it permits graded school-districts to embrace more than nine sections of land. When this district found difficulty in collecting its taxes, if it be true, as contended by complainant, that it did not comprise the entire township, there was no provision of law under which the district could be enlarged, as there was no other organized district upon which the school inspectors could act. *Simpkins v. Ward,* 45 Mich. 559. The only way in which the boundaries could be extended by the addition of unorganized territory was the one taken. If, as a matter of fact, the entire township constituted the district, this law added nothing to it. If it did not, it merely attempted to enlarge the boundaries of an existing district, leaving it still a graded school-district, to be managed in accordance with the provisions of the general law, except that its boundaries could not be changed otherwise than by legislative action. It is no new thing for the Legislature to fix the boundaries of school-districts. It is done by the charter of nearly every city or village in the State, and some of them go so

far as to provide exceptional methods of electing officers, and limiting the classes entitled to vote. *Mudge v. Jones,* 59 Mich. 165. Certainly, these are as destructive of the system referred to as the act in question, but none of these acts have ever been held invalid. On the contrary, the legislative intent has been invariably carried out where they have been brought before the Court; and in *Perrizo v. Kesler,* 93 Mich. 280, an act providing for the organization of school-districts from entire townships was held valid.[1] This act was passed by the same Legislature as was that in question, but later in the session. It further imposed the burden of all existing debts upon the new district, and this was held to be within the authority of the Legislature. In view of these decisions, we cannot assent to the contentions of complainant, viz., that the effect of the act is to violate the provision requiring a system of primary schools to be provided for and established, or that it destroys the uniformity of taxation, or that the Constitution limits school-districts to nine sections of land, because such was the limitation by law at the time of its adoption.

The claim that the act should be treated as void for uncertainty, in that it does not specifically describe the territory to be attached, does not impress us as tenable. The act clearly evinces the design, upon the part of the Legislature, of including all territory in the township in district No. 1. Its very object, viewed by the light of the testimony, appears to have been to make certain the boundaries of the district, which were involved in greater or less uncertainty. The evidence shows that this township, with the exception of the village of Hancock, is practically a wilderness, and the inference that this legislation attempts to impose upon remote lands a part of the expense of supporting the village schools may not be unwar-

---

[1] Act No. 176, Laws of 1891.

ranted. The propriety of such legislation is, however, a subject for legislative consideration.

A more troublesome question arises over the right to tax, for the cost of a school-house, lands more than 2½ miles distant. Subdivision 6 of section 5052 of Howell's Statutes provides for the raising of money for the purpose of building school-houses. It is as follows:

"To vote such tax as the meeting shall deem sufficient to purchase or lease a site or sites, or to build, hire, or purchase a school-house or houses; but the amount of taxes to be raised in any district for the purpose of purchasing or building a school-house or houses in the same year that any bonded indebtedness is incurred shall not exceed, in districts containing less than ten children between the ages of five and twenty years, $250; in districts having between ten and thirty children of like age, it shall not exceed $500; and in districts having between thirty and fifty children of like age, it shall not exceed $1,000. No legal subdivisions [subdivision] of land shall be taxed for building a school-house unless some portion thereof shall be within two and one-half miles of said school-house site."

In the case of *People v. Board of Education*, 18 Mich. 400, Chief Justice COOLEY asserts that cities and villages have enlarged powers in relation to schools. These are conferred by special acts, and in all other particulars the primary-school law controls the union school-districts in such localities. We believe it to be the ordinary practice in these to subject the entire district to taxation for the cost of school-houses, wherever located.

Our attention is not called to any special legislation conferring unusual powers upon the district, and this provision of the primary-school law must apply to it, unless there is something in the graded-school act which precludes it. The law restricting districts to nine sections is an old one. As early as 1846, provision was made for grading schools, and uniting districts with that object.[1] That of necessity

---

[1] Rev. Stat. 1846, page 230.

relieved such districts from the restriction to nine sections, and graded school-districts, under the existing act, are not so limited, as has been shown. This graded-school act provides for the establishment of a high school, and the theory of the act is that a larger district may be created, and greater expense incurred, than in districts where primary schools only are provided. We are not prepared to hold that persons beyond the 2½ mile limit are to enjoy enlarged school privileges to be found in districts where the schools are graded, and advanced branches taught, without being subject to the burden of aiding in their support. The rule contended for might work substantial justice in this case, where remote wild lands are taxed for schools beyond the reach of inhabitants, if there be any, but the same rule would apply to a case where resident lands were comparatively near. The distance of 2½ miles is an arbitrary one, and the Legislature could as well have made it greater or less. By the graded act they have left it, without limitation, to the judgment of the officers, and in this case they have, by the act in question, extended it to the boundaries of a large township.

We see no alternative but to affirm the decree dismissing the bill, with costs.

The other Justices concurred.