ATTORNEY GENERAL, *ex rel*. KIES, *v*. LOWREY.[1]

1. QUO WARRANTO—DELAY—SCHOOL TRUSTEES.
   A proceeding in the nature of *quo warranto*, begun in October, to inquire into the right of respondents to hold the office of trustees of a school district under an act of the legislature approved in March of the same year, is not unreasonably delayed.

2. CONSTITUTIONAL LAW—SCHOOL DISTRICTS—LOCAL SELF-GOVERN-MENT.
   A school district is a State agency, created by the legislature, and the management of its local affairs must be in conformity to such laws of a general character as may from time to time be enacted.

3. SAME—CHANGE OF BOUNDARIES—PROPERTY RIGHTS.
   The legislature may change the boundaries of a school district

| 131 | 639 |
| 135 | 2569 |
| 131 | 639 |
| f139 | 2493 |
| 131 | 639 |
| 144 | 2334 |
| 131 | 639 |
| 153 | 4108 |

[1] Rehearing denied March 23, 1903.   Writ of error allowed April 15, 1904, removing cause to the United States Supreme Court.

without reimbursing the portion deprived of the use of the common property.

4. SAME—TITLE TO ACT.

Act No. 315, Local Acts 1901, was entitled "An act to incorporate the public schools of the village of Jerome, Hillsdale county, Michigan; define the boundaries thereof, provide for the election of trustees and fix their powers and duties, and provide for the distribution of the territory of the disorganized districts." *Held,* that the title did not indicate more than one purpose, which was to give school facilities to all of the territory mentioned, under changed conditions.

5. SAME—SCHOOL DISTRICTS—BOUNDARIES—LOCAL SELF-GOVERNMENT—SITES FOR BUILDINGS—SCHOOL INSPECTORS—SCHOOL TRUSTEES—LEGISLATIVE APPOINTMENT—OBLIGATION OF CONTRACTS—TITLE TO ACT.

The act in question sought to incorporate into one union school district a part of the lands of several primary school districts. It named the persons who should constitute the first board of trustees, gave the new district the property within its limits, required it to pay the outstanding debts of the old districts, fixed the site of the central school building, and directed the board of school inspectors of the township to attach the remaining portions of the primary school districts to other school districts. *Held:*

(1) That, in changing the boundaries, disposing of the property, and providing for the payment of the debts, the act was not unconstitutional as depriving the inhabitants of such territory of the right of local self-government.

(2) That if the legislature did not have authority to fix, beyond revocation, the site of the school building, such provision might be held directory merely, and eliminated if necessary to sustain the act.

(3) That, as the township board of school inspectors were authorized and elected to make changes in the boundaries of school districts, the act, in requiring them to attach the remaining land to other school districts, could not be said to be invalid as a legislative appointment.

(4) That the appointment of the trustees for unnecessarily long terms (*i. e.,* one and two years, respectively) was contrary to the provisions of the Constitution contemplating that school districts should be managed by local officers; but, as the offices might be filled under the general law, the act was not invalid.

(5) That the act did not violate the obligation of contracts.

(6) That the act was not broader than its title.

GRANT, J., dissenting; being of the opinion that the act deprived the inhabitants of the right of local self-government, vested in school districts by the Constitution.

Error to Hillsdale; Chester, J. Submitted June 4, 1902. (Docket No. 87.) Decided November 18, 1902.

*Quo warranto* proceedings by Horace M. Oren, attorney general, on the relation of L. E. Kies and others, against Thomas J. Lowrey and others, to inquire by what right respondents claimed to exercise the office of trustees of the public schools of the village of Jerome. From a judgment of ouster, respondents bring error. Reversed as to part of respondents.

*F. H. Stone* and *W. J. Sampson* (*Henry B. Graves*, of counsel), for appellants.

*Lyon & McIntyre*, for appellees.

HOOKER, C. J. At its 1901 session, the legislature passed local act No. 315, entitled:

"An act to incorporate the public schools of the village of Jerome, Hillsdale county, Michigan; define the boundaries thereof, provide for the election of trustees and fix their powers and duties, and provide for the distribution of the territory of the disorganized districts."

By this act it sought to incorporate in one union and graded school district lands described in the act, which had previously been divided between several primary school districts. It named the persons who should constitute the first board of trustees, and provided for the distribution of long and short terms between them by lot; their successors to be elected by the electors of the district shortly before the expiration of their respective terms. It provided that the primary and graded school law should apply to this district; and it may be said, in a general way, that it gave to the new district the property within its limits which had belonged to the respective districts

from which it was created. It also required the new district to assume and pay the outstanding debts and obligations of the old districts. The new district did not include all of the lands comprised in the several districts from which it was organized, and the act provided that, within 30 days after the act should take effect, the board of school inspectors of the township of Somerset should meet, and attach to other school districts the portions of the several districts not included in the new.

This proceeding is in the nature of a *quo warranto* against the persons constituting the board, to inquire into their right to exercise and enjoy the office of trustee of said new district, which they were doing at the time the proceeding was instituted, in the effort to carry out the provisions of the act. It was commenced in October, 1901, and it cannot be said to have been unreasonably delayed.

Counsel for relators attack the validity of this legislation. Their brief states the points thus:

"*First.* It deprives this school district or municipality of the right of local self-government, guaranteed to all municipalities by the Constitution.

"*Second.* The title to the act indicates, and the act itself embraces, more than one object.

"*Third.* The act is broader than the title. The body of the act embraces many objects not covered by the title.

"*Fourth.* The act, as passed, impairs the obligation of contracts, within the meaning of the Constitution of the United States and the Constitution of the State of Michigan."

Does this act impair the right of local self-government? Cases have, of late, been frequent where legislation has been said to impair this right of local self-government, and it would seem that different views are entertained by counsel and by the public as to the character and extent of this alleged right. It may, therefore, be profitable to consider briefly what it is, whence it is derived, and whether it has limitations upon it, or is itself a limitation upon the authority of the State. It is often alluded to under the name of "home rule." As descriptive of a policy, "home

rule " is a significant and appropriate term; but, as descriptive of a right, it is indefinite, for it is legally coextensive with the right of local regulation or control, and its extent must always be tested by the Constitution.   The State, consisting of its electors, has absolute political power, except as limited by the Federal Constitution.   Until the electors have adopted a Constitution, there is no public corporation, either municipal or *quasi* municipal, that can resist the authority of the State, which has power to create both, and to destroy them, and to make governmental agencies of them.   It is not necessary to discuss municipal corporations proper, because we are not dealing with one; so we may pass them with the suggestion that, under repeated decisions, they exist through the action or acquiescence of the State; are subject to regulation and control by the State, except as qualified by the provisions of the United States Constitution; and this has application to interests in the nature of private rights only, which such corporations have and enjoy.

The *quasi* corporations are radically different.   They consist of counties, townships, school districts, highway districts, etc.   They are governmental agencies, and it is, to say the least, doubtful if they are in any respect anything else, or have any rights that can be called private. They perform many functions, but these are for and about the business and policies of the State, which has imposed upon them the responsibility and expense of maintaining highways, schools, drains, bridges, etc.   This may be called a right or an obligation, according to the views of the citizen who is taxed locally for the several purposes; but, whatever it is called, it depends upon the Constitution or law of the State, and otherwise would not exist.   If upon the Constitution, the legislature has not the power to change it; but, if upon an act of the legislature, it is so subject to change.   There is danger of confusing rights derived from these different sources, and it is possible to erroneously conclude that any apparent injustice in legislation is an invasion of local rights of self-govern-

ment, and therefore invalid, when that can be truly said only of such as invade constitutional rights of self-government.

The school district is a State agency. Moreover, it is of legislative creation. It is true that it was provided for in obedience to a constitutional requirement; and, whatever we may think of the right of the district to administer in a local way the affairs of the district under the Constitution, we cannot doubt that such management must be in conformity to the provisions of such laws of a general character as may from time to time be passed, and that the property of the district is in no sense private property, but is public property, devoted to the purposes of the State, for the general good, just as almshouses and courthouses are, although confided to local management, and applied to uses which are in a sense local, though in another sense general.

We insert here from counsel's brief the alleged infringements upon local rights, upon which reliance is placed:

"(a) The act names and appoints for definite terms (not provisionally) the officers of this municipality.

"(b) It fixes definitely the site of the central school building for said district, and the uses to be made of said building, and does not allow the resident taxpayers and voters any voice in the matter.

"(c) It gives arbitrary power to a board appointed by legislative enactment (and to no other) to confiscate the property of the old districts, and fixes definitely what is to be done with this property; thus depriving the resident taxpayers and voters of all voice in the matter.

"(d) It fixes definitely what shall be done with the property of the old districts, and the uses to which it shall be put, and leaves absolutely no discretion in the local authorities nor in the trustees of said district.

"(e) It fixes definitely what shall be done with the territory of the old districts not included in the new district, and appoints by legislative enactment the officers that are to make the disposition of this territory.

"(f) It appoints by legislative enactment a board of school inspectors for this district, which are constitutional officers, and deprives the local taxpayers and voters of all voice in the matter."

Among the above points, our attention is naturally attracted to "*c*," wherein it is stated that the territory excluded is deprived of any share of the public property. It does not seem to be denied that the legislature may change the boundaries of districts. That has been too often done to admit of question. Numerous school districts have lost territory through city charters, and the case of *Keweenaw Ass'n* v. *School Dist. No. 1,* 98 Mich. 437 (57 N. W. 404), is conclusive upon the point. See, also, *Perrizo* v. *Kesler,* 93 Mich. 280 (53 N. W. 391), and *Pingree* v. *Board of Education,* 99 Mich. 408 (58 N. W. 333). The authority of the legislature to change the boundaries of counties, townships, and school districts does not necessarily involve the obligation to reimburse the portion deprived of the use of the public property. Frequently such laws contain provisions for the purpose, but it is not necessary. The property is public property, held and used for the purposes of the State, which may, in the absence of constitutional prohibition, make such disposition of it as it sees fit. Mr. Dillon, in his work on Municipal Corporations (4th Ed., § 185), in discussing the enlargement of boundaries, states the general rule:

"Not only may the legislature originally fix the limits of the corporation, but *it may, unless specially restrained in the constitution, subsequently annex,* or authorize the annexation of, contiguous or other territory; and this without the consent, and even against the remonstrance, of the majority of the persons residing in the corporation or on the annexed territory. And it is no constitutional objection to the exercise of *this power of compulsory annexation* that the property thus brought within the corporate limits will be subject to taxation to discharge a pre-existing municipal indebtedness, since this is a matter which, in the absence of special constitutional restriction, belongs wholly to the legislature to determine."

A copious note fully vindicates the text.

Again ( section 187) he says:

"In connection with the power of the legislature to create municipal corporations and to determine their territo-

rial extent, reference may be made to the *division of towns or public corporations* by legislative act or authority. There is no restriction on the general power, unless it be found in the constitution of the State. In case of division, the legislature may, as we have already seen, apportion the burden between the two, and determine the proportion to be borne by each. In Connecticut, ' the legislature,' says the supreme court, 'have immemorially exercised the power of dividing towns at its pleasure, and, upon such division, apportioning the common property and common burdens in such manner as to it shall seem reasonable and equitable.' Accordingly it may impose on one town, upon such division, the entire expense of erecting and maintaining a bridge across a river which is the dividing line between the two towns."

And again, in section 188:

" So it has been frequently held that if a new corporation is created out of the territory of an old corporation, or if part of its territory or inhabitants is annexed to another corporation, unless some provision is made in the act respecting the property and existing liabilities of the old corporation, the latter will be entitled to all the property, and be solely answerable for all the liabilities."

In further elucidation of this rule, we quote section 189:

" But upon the *division of the old corporation*, and the creation of a new corporation out of part of its inhabitants and territory, or upon the annexation of part to another corporation, the *legislature may provide* for an *equitable appropriation or division* of the property, and impose upon the new corporation, or upon the people and territory thus disannexed, the obligation to pay an equitable proportion of the corporate debts. The *charters and constituent acts* of public and municipal corporations are not, as we have before seen, contracts, and *they may be changed at the pleasure of the legislature*, subject only to the restraints of special constitutional provisions, if any there be. And it is an ordinary exercise of the legislative dominion over such corporations to provide for their enlargement or division, and, incidental to this, to apportion their property, and to direct the manner in which their debts or liabilities shall be met, and by whom. The opinion has been expressed that the partition of the property *must be made at the time of the division* of or

change in the corporation, since otherwise the old corporation becomes, under the rule just before stated, the sole owner of the property, and hence cannot be deprived of it by a *subsequent* act of the legislature.   But, in the absence of special constitutional limitations upon the legislature, this view cannot, perhaps, be maintained, as it is inconsistent with the necessary supremacy of the legislature over all its corporate and unincorporate bodies, divisions, and parts, and with several well-considered adjudications."

See, also, *Township of Springwells* v. *Wayne County Treasurer*, 58 Mich. 240 (25 N. W. 329), which impliedly recognizes this rule.   See, also, *Perrizo* v. *Kesler, supra*, where MORSE, C. J., explicitly concedes this power to the legislature in a school-district case.

Whatever we may think of the justice of this act (and we cannot say that the situation was not fully known and discussed by the legislature), we cannot doubt the legislative authority to change these districts, and provide for the disposal of their property and payment of their debts, as was done in this case.

The law is said to fix the site of a school building. This is not usual, but we are not convinced that it is beyond the power of the legislature to locate its schoolhouses, courthouses, and almshouses.   No authority is cited to the contrary, and, without deciding the question, we may say that the sites alluded to had already been located, and one built upon, by the districts.   In saying that these should be deemed to be, respectively, a schoolhouse site and the central schoolhouse for the new district, the legislature, if it had not the power to fix beyond revocation such sites, can easily be held to have made a provision which was directory merely, and, whatever we may think of their power in the premises, no one would claim that it was designed to forbid future action by the board, and we might safely eliminate the provision, if necessary to sustain the act, in accordance with a common and well-understood rule.

But it is said that some of the territory was left out of the new district, and that the legislature fixed definitely

what should be done with it, and appointed the officers who should attach it to new districts. If this opinion is correct upon the first point discussed, it cannot be doubted that the legislature might itself have attached this territory to specific districts. This it did not do, but attempted to confide the subject to the township school inspectors. This was the board authorized to deal with such questions, and had been elected by the township for such purposes. This cannot be said to be an appointment by the legislature, within the case of *Moreland* v. *Millen*, 126 Mich. 381 (85 N. W. 882).

The further objection is made upon the ground that the officers were named by the legislature, and their terms fixed at one, two, and three years, respectively. We understand that four of these have been superseded by successors duly elected. Presumably, two still hold their offices, and, if the legislature had not the power to appoint them, the district should have filled them under the general law. We are of the opinion that the Constitution refers to school districts as they existed under our previous Constitution and laws, and that it was expected that they would be managed by local officers, and therefore that the rule laid down in *Moreland* v. *Millen* applies as to officers. The officers were named by the legislature for unnecessarily long terms, even if it be supposed that the appointments were intended to be provisional. Under the general law, the offices might have been filled, and may be yet. We understand from counsel, though the record does not appear to so state, that only four of respondents do not now hold under such appointment, if they are still acting as officers. The other two unlawfully hold the office, but we have no means of telling which ones of the six they are. Perhaps this is not important, as the attack seems aimed at the legislation, rather than the appointees.

· The other two points need little discussion. We have so often discussed titles to acts that the law is pretty well understood; and we therefore content ourselves with say-

ing that, in our opinion, this title does not indicate more than one purpose, which is to give school facilities to all of the territory mentioned, under changed conditions. Nor do we think the act broader than the title.

We have already shown that the obligation of contracts is not impaired. The districts did not hold this property under any contract with the State, but as a public agency.

The judgment of ouster should be affirmed as to such officers as now hold under the legislative appointment, if there be any thus holding. As to others, if any, it will be reversed. Neither party will recover costs.

MONTGOMERY, J., concurred with HOOKER, C. J.

MOORE, J. Because of the decision in *Moreland* v. *Millen*, 126 Mich. 381 (85 N. W. 882), I concur in the result.

GRANT, J. (*dissenting*). The legislature of 1901 passed an act entitled:

"An act to incorporate the public schools of the village of Jerome, Hillsdale county, Michigan; define the boundaries thereof, provide for the election of trustees and fix their powers and duties, and provide for the distribution of the territory of the disorganized districts."

Act No. 315, Local Acts 1901.

It was given immediate effect, and approved March 1st. The district, as organized by the act, was formed from the major part of three districts then existing, and situated in the townships of Somerset and Moscow, in Hillsdale county. Section 1 defines the boundaries of the district. Section 2 provides for six trustees, naming them. They were to meet within 20 days after the act took effect, and divide into three equal divisions; the first division to expire at the time of the first annual school meeting, the second at the second annual meeting, and the third at the third annual meeting. The terms were to be decided by lot. If any vacancies occurred in their number, they were authorized to fill them by appointment. Section 3 pro-

vides for the election of trustees upon the expiration of the terms of office of those who were appointed by the act. Section 4, in addition to the powers imposed by the act, confers also upon the trustees all the powers and privileges conferred upon union and graded school districts by the general law, and the powers and duties of school inspectors are vested in said trustees, who are made *ex officio* a board of school inspectors. By section 7, all the lands, school houses and sites, furniture, libraries, property, and effects belonging to the several old school districts were transferred to, and declared to be the property of, the schools established by the act; and all the debts and obligations of the three districts were imposed upon the new district. Section 9 fixed the site of the schoolhouse to be the one then owned and occupied by fractional school district No. 2, and made the building situated thereon the central school building of the public schools of the village of Jerome, to be used for academic and more advanced classes of scholars, and such other classes as the board of trustees should deem necessary. Section 10 authorized the sale of all the property of the old districts, and directed that the moneys received therefrom should be used in making improvements and additions to the central school building. Section 11 directed the school inspectors of the township of Somerset to attach to other districts within the boundaries of said township such parts of said districts as were not comprised in the territory of the new district. This suit is instituted by the attorney general to test the validity of the above act. The sole question presented is its constitutionality. The court below held the act unconstitutional.

Four reasons are urged against the constitutionality of this act: (1) That it deprives the school district of local self-government. (2) That the title to the act embraces more than one object. (3) That the body embraces objects not covered by the title. (4) That it impairs the obligation of contracts.

A school district is a municipal corporation. *School Dist. No. 4* v. *Gage*, 39 Mich. 484 (33 Am. Rep. 421); *Seeley* v. *Board of Education*, 39 Mich. 486. See, also, *Stuart* v. *School Dist. No. 1*, 30 Mich. 69. The legislature has no more right to interfere with local self-government therein than it has to interfere with the local self-government of cities, villages, and townships. The Constitution gives these corporations the same right to control their local affairs that it gives to other municipal corporations. The act does not pretend to appoint these six trustees as provisional officers, appointed for the sole purpose of launching the corporation into existence, and providing the inhabitants thereof with the right to then assume the reins of government and select their own officers. If the legislature could appoint these trustees for one and two years, it could as well appoint them for ten or more. This provision of the act is therefore clearly unconstitutional. *Moreland* v. *Millen*, 126 Mich. 381 (85 N. W. 882).

This act not only deprives the inhabitants of this district of the right to choose their own officers, but it also deprives them of the right to locate their school site. It takes away all the property from the old districts and transfers it to the new; thereby depriving the inhabitants of the old districts, living in the territory not included within the new, of all interest in the property to which they have contributed. The act also authorizes the trustees appointed by the legislature to sell all the buildings and sites of the old districts, and to use the money in repairing, improving, and adding to the central school building located upon the site fixed by the act. Besides, it makes the trustees school inspectors, who are constitutional officers.

If the only objection to this act were the appointment by the legislature of permanent officers, it might possibly be sustained under *Moreland* v. *Millen*, *supra*, and an election ordered to choose trustees. But the act wipes out nearly every vestige of local self-government. The inhabitants are given no voice in the election of officers, in the choice of a school site, in the disposal of their

property, or the uses to which the proceeds of the sale shall be put. All the important powers incident to these corporations, and essential to their local management, are absolutely taken away. If this act be sustained, it must follow that the legislature can absolutely deprive the inhabitants of these school districts of the right to locate their sites and to control their property for school purposes in such manner as they may deem for their best interests. It must follow that the legislature can make contracts for every school district in the State with teachers, can fix the amount each district shall raise by tax, and can determine how much each district must spend in erecting a schoolhouse. If we understand the position of the learned counsel for the respondents, they insist that the legislature possesses just this power, and they compare the position of the schools to boards of health established by the legislature. Schools are constitutional municipalities (*i. e.*, they are provided for in the Constitution), while boards of health are not.

The provisions of the Constitution of 1835 were substantially the same in regard to primary schools as are those of the Constitution of 1850. The provision relied upon to confer this power exclusively upon the legislature is section 4 of article 13, requiring the legislature to "provide for and establish a system of primary schools, whereby a school shall be kept without charge for tuition at least three months in each year in every school district in the State." So the Constitution requires the legislature to "provide for the incorporation and organization of cities and villages." What difference is there between the power to "provide for and establish," and the power to "incorporate and organize?" Does one confer the right of local self-government, and the other take it away? The Constitution contains not a sentence conferring greater power upon the legislature to interfere with local self-government of school districts than it does with that of cities and villages. It requires them to provide for the organization of both. Local self-government was exercised by

both under the old Constitution, and was exercised when the new Constitution was adopted, and has been exercised ever since. The legislature has attempted to interfere in various ways in the local self-government of cities and villages, and these acts have been declared unconstitutional. This is the first time it has been urged in this court that the exclusive control over school corporations is vested in the legislature, to the entire exclusion of local self-government. Broader language may have been used in some of the decisions than the facts called for, but no case has before been presented involving the destruction of local self-government in these municipalities. The language quoted and relied upon to sustain this doctrine, from *Perrizo* v. *Kesler*, 93 Mich. 283 (53 N. W. 391), is used where the act organized a whole township into a single school district, and required a petition to be signed by a majority of the electors, to be filed with the township clerk 15 days before the annual town meeting, giving notice that at such meeting the officers for such organized school district would be chosen. The question was whether the township board was a constitutional tribunal to determine whether the requisite number of qualified electors had signed the petition. The same opinion, at page 284, speaks of school districts as municipal corporations, saying, "The history of our State is full of such legislation in the enlargement of the boundaries of municipalities, and the right so to legislate cannot now be questioned." The boundaries of cities, villages, townships, and school districts have been fixed by the legislature. No one was ever organized by an act of the legislature without fixing the boundaries.

In *Pingree* v. *Board of Education*, 99 Mich. 404 (58 N. W. 333), the sole question was the constitutionality of an act making the mayor *ex officio* a member of the board of education of the city of Detroit, with certain veto powers. In that case the territory of the school district was the same as the territory of the city of Detroit. The people elected the mayor, and, when nominated and

elected, the people would understand that they were voting for a member of the school board. While it is true that the qualifications for voters in a school district are somewhat different from those in the election of a mayor, yet the power so conferred upon an elective officer is not in conflict with the right of local self-government. If, however, it can be held that it is, and the language there used can be so construed as to hold that there is no such thing as local self-government for the school districts of this State, the doctrine ought, in my judgment, to be limited to the facts of that particular case. Of course, it was intrusted by the Constitution to the legislature to provide for a primary school system, just as the power was confided to the legislature to provide for the organization of cities and villages. Section 14, art. 15, of the Constitution, requires judicial officers of cities and villages to be elected, but that all other officers shall be elected or appointed as the legislature may direct. We have distinctly held that this does not mean appointment by the legislature, but by the local authorities.

*Belles* v. *Burr*, 76 Mich. 1 (43 N. W. 24), is in accord with the doctrine I now maintain, for it holds that the authority granted by the Constitution to the legislature to establish school systems confers the power to prescribe what officers shall be chosen to conduct the affairs of the districts, to define their powers and duties, their terms of office, and how and by whom they should be chosen. This authority is no other or different from that conferred upon the legislature over cities and villages. Under both the Constitutions of Michigan, no such power as is now claimed has ever before been exercised; nor has it ever been claimed that the people had no right of local self-government over the district schools. On the contrary, the people have been left in control of their local affairs in school districts as well as in other municipalities. I think this is a practical construction of this provision of the Constitution against the contention now made. The act,

in my judgment, cannot be sustained, and should be held
void.

Under this disposition of the case, it is unnecessary to
discuss the other questions.