HULAN *v.* TOWNSHIP OF GREENFIELD.

1. ELECTIONS—NOTICE OF ELECTION, PURPOSE OF.
    The sole purpose of a notice of election, whether general or special, is to notify all parties interested, and particularly electors, in order that they may register and cast their votes on the issues to be determined at the day and place fixed for the election.[1]

2. SAME—GIVING OF STATUTORY NOTICE MORE IMPERATIVE IN SPECIAL THAN IN GENERAL ELECTIONS.
    Where an election is special, observance of statutory provisions for giving notice of time, place, and purpose is more imperative than in case of a general election for which time and place are fixed by statute; the requirements of notice being regarded as directory for general elections and mandatory for special elections where time and place are not fixed by law.[2]

3. SAME — SUBSTANTIAL COMPLIANCE WITH STATUTE REQUIRING GIVING OF NOTICE SUFFICIENT.
    While failure to strictly comply with statutory provisions for published notices in judicial proceedings will often defeat jurisdiction, a more liberal view obtains in election matters, and substantial compliance will be sustained.[3]

4. MUNICIPAL CORPORATIONS—ELECTIONS—NOTICE—IRREGULARITY — SUFFICIENCY OF NOTICE.
    In *quo warranto* proceedings to test the validity of an election, where it appeared that there was a substantial compliance with 1 Comp. Laws 1915, § 3313, in giving notice of a special election for the annexation of territory to the city of Detroit, and no showing was made that any elector was deprived of his right to vote or in any way misled or that the result was affected by a claimed irregularity in publishing the notice of said election for four weeks in different newspapers in said city rather than for four successive weeks in one newspaper or more the trial court was justified in holding the election valid.[4]

[1]Elections, 20 C. J. § 80; [2]Id., 20 C. J. §§ 81, 82; [3]Id., 20 C. J. § 83 (1926 Anno); [4]Municipal Corporations, 28 Cyc. p. 211.
    229—Mich.—18.

Error to̅ Wayne; Lamb (Fred S.), J., presiding. Submitted October 29, 1924.    (Docket No. 41.)    Decided December 10, 1924.

Petition in the nature of *quo warranto* by James B. Hulan against the township of Greenfield and others to test the validity of an election.    Burt E. Taylor was allowed to intervene as a party defendant.    Judgment dismissing the petition.    Plaintiff brings error. Affirmed.

*William G. Fitzpatrick* (*W. E. Tarsney,* of counsel), for appellant.

*George A. Kelly,* Corporation Counsel, and *Clarence E. Page,* Assistant Corporation Counsel, for appellees.

*Campbell, Bulkley & Ledyard* (*Selden S. Dickinson,* of counsel), for intervener.

STEERE, J.    On June 30, 1923, one Mullholland and others petitioned the board of supervisors of Wayne county, pursuant to the provisions of Act No. 279, Pub. Acts 1909 (1 Comp. Laws 1915, § 3309 *et seq.*), and acts amendatory thereof, for annexation of a certain portion of Greenfield township to the city of Detroit.    At a duly called special meeting of the Wayne county board of supervisors held August 28, 1923, the board took favorable action on the petition and passed a resolution providing that the question of annexation be submitted to the electors of the district to be affected at a special election to be held on October 9, 1923.    The election was held on the date named and duly conducted with separate ballot boxes for the respective territorial entities as the act requires.    The election returns showed a substantial majority in favor of the annexation.    Plaintiff is an elector of Greenfield township residing outside of the annexed territory.    Within 30 days after the election

he filed a petition in the nature of *quo warranto,* in the circuit court of Wayne county, to test the validity of the annexation proceeding, making the city of Detroit, Greenfield township, and their respective clerks defendants. Answers were filed and hearing had, resulting in dismissal of said petition.

The record discloses three assignments of error, but one of which is urged or argued in the brief of plaintiff's counsel. It is as follows:

"The court erred in holding that the publication by the city clerk of Detroit of the notice of the date and purpose of the special election was proper, sufficient and legal."

Section 10 of the act (1 Comp. Laws 1915, § 3313) makes it the duty of the clerk of each city, village or township in the district to be affected by the proposed change to give notice of the date and purpose of the election provided for—

"by publication in one or more newspapers published within said district at least once in each week for four weeks preceding said election, and by posting a like notice in at least ten public places in said district not less than ten days prior to such election."

It is undisputed that a proper notice of the special election was posted in the required number of places both in the city and township in compliance with the statute, and the township clerk of Greenfield township showed under oath that prior to the date of said election he caused a proper notice thereof to be published once each week for four successive weeks preceding the election in the Strathmore Press, a newspaper published in the district.

Aside from allegations and denials in the pleadings, this record does not disclose that the city clerk of Detroit took any steps in performance of the duty imposed upon him by the statute requiring him to give notice of the date and purpose of the election

by publication in one or more newspapers published in the district to be affected.   That duty was attempted by a witness named Distain who testified that he had for some time been connected with election matters in Detroit and had "practical charge of it under the commission," performing the actual work "to carry out the directions of the commission;" that at the election in question held October 9, 1923, he had charge and supervision of the various preliminary matters relating to it including publication of "the advertisements required by law to be published in the newspapers" that a notice, of which he produced a copy,—

"was published in three different newspapers, one publication in two and twice in the Times.   Detroit Free Press, September 6, 1923, Detroit News, September 14, 1923, Detroit Times, September 20, 1923, and Detroit Times, September 27, 1923.   *   *   * in no one paper did the publication appear for four consecutive weeks.   In addition to that I posted the notice of election in 1,218 public places."

In explanation of the method of publication he stated that this was the way they had handled the matter "for years back" it being "the customary practice to distribute the advertising among the newspapers." The city clerk of Detroit did not appear as a witness to explain what if anything he had to do with either the posting or publication.   It does, however, appear that the city charter makes him a member of the election commission, and as Distain was acting under the commission we may perhaps assume as apparently do counsel that the posting and publication was in his name or authorized by him.

Plaintiff's contention against the validity of the election is that a proper construction of the statute providing for publication of notice by the city clerk disjunctively requires him to publish it at least once each week for four consecutive weeks in one newspaper

in the district *or,* if greater publicity is deemed desirable, at least once each week for four consecutive weeks in the more than one newspapers selected for that purpose.

Counsel for defendants contend that by the course pursued greater publicity has been given the notice by publishing it in the three papers and as it appeared once each week for four successive weeks in some newspaper the course pursued literally complied with the special wording of the statutory requirements. Conceding, however, that the method pursued was permissible, it does not appear to even fulfill Distain's suggested reason of equal distribution of advertising patronage, while to have published it but two more weeks in the Times would not only have given the notice yet "greater publicity," under which it is sought to justify, and avoided possibility of controversy over compliance with or construction of the statute. Counsel do not cite any analogous case where defendants' construction of this or any similar statute is involved, and what research we have been able to make discloses none.

It is true as defendants' counsel point out that the language of the statute requiring publication for four consecutive weeks "in one or more newspapers" varies somewhat from that commonly found in statutes relative to legal notices of mortgage foreclosures, substituted service, probate and other legal notices which generally phrase it as "some newspaper"— "any newspaper"—"a newspaper," etc.; and we are cautioned in that connection against any preconceived notions resulting from familiarity with such statutes and the authorities passing upon them.   Just what preconceived notions or familiarity with such statutes those who framed and passed this act had is open to conjecture, but the phraseology used is not unfamiliar in legislation; and "in one or more newspapers" comes down to us from the Revised Statutes of 1846, chap.

102, § 67, re-enacted in a provision of our present judicature act relative to proof of publication (3 Comp. Laws 1915, § 12523).

But in this post-election inquiry we are concerned with the legal effect rather than the wisdom of the method of publication adopted. While this was a special election it was held at the same time and place as a general primary election in the city, and electors in attendance were supplied with ballots for both purposes. The end aimed at by proclamation and notice of an election is to inform the electorate generally of the place, time and purpose of the election. The proofs show in the instant case that this was done more thoroughly and with greater publicity than had the notice been limited to a literal compliance with requirements of the statute. The notice was published once each week for four successive weeks, each time in some leading newspaper in the city and was posted up in 1,218 public places throughout the city, or more than 121 times as many places as the law requires. A general notice of the election was also published in the papers ten days preceding the election. At that election in the city 53,455 electors voted on the proposition, 28,039 voting in favor of it and 25,416 against it; 1,383 votes were cast in the portion of Greenfield township proposed to be annexed, 1,035 being in favor of annexation and 348 against it. In the portion of the township outside the territory proposed to be annexed 73 votes were cast with 54 opposed to the measure and 19 in favor of it. The majority in favor of the proposition in the entire district or territory affected by the annexation was 3,275.

The sole purpose of a notice of election, whether general or special, is to notify all parties interested, and particularly electors, in order that they may register and cast their votes on the issues to be determined at the day and place fixed for the election.

It is not shown, and it cannot be presumed, that under the broadcasting of notices shown here the majority given at that election would have been overcome and a different result reached had the notice been published for four successive weeks in one newspaper instead of the manner of publication adopted.    No showing or claim is made that any elector who would have voted on the proposition failed to get notice or was deprived of any right by reason of the manner in which the notice was published in the papers or that the election was not fairly and legally conducted with full attendance of the electorate, resulting in expression of the popular will on the proposition proposed.

It is true the courts generally hold that where the election is special, observance of statutory provisions for giving notice of time, place and purpose is more imperative than in case of a general election for which time and place are fixed by statute, the requirements of notice being regarded as directory for general elections, and mandatory for special elections where time and place are not fixed by law.    When the required notice of a special election fails to state the time or place the election is invalid (McCrary on Elections [4th Ed.], 135).    It is also recognized that while failure to strictly comply with statutory provisions for published notice in judicial proceedings will often defeat jurisdiction, a more liberal view obtains in election matters and substantial compliance will be sustained.    In Cooley on Constitutional Limitations (7th Ed.), 928, 930, it is said:

"As the execution of these statutes must very often fall to the hands of men unacquainted with the law and unschooled in business, it is inevitable that mistakes shall sometimes occur, and that very often the law will fail of strict compliance.    Where an election is thus rendered irregular, whether the irregularity shall avoid it or not must depend generally upon the effect the failure to comply strictly with the law may

have had in obstructing the complete expression of the popular will, or the production of satisfactory evidence thereof. Election statutes are to be tested like other statutes, but with a leaning to liberality in view of the great public purposes which they accomplish. * * * And where a party contests an election on the ground of these or any similar irregularities, he ought to aver and be able to show that the result was affected by them."

It was early said by this court, speaking through Chief Justice COOLEY:

"Upon this point I refer to the following decisions where, in a great variety of cases, it has been held that statutory provisions prescribing the conduct of elections are to be regarded as directory only, except where they are of such a character that a failure to comply with them would have the effect to prevent or obstruct the complete expression of the popular will, or the production of satisfactory evidence thereof (citing numerous cases)." *People* v. *Cicott,* 16 Mich. 283, 323.

In *Adsit* v. *Secretary of State,* 84 Mich. 420, 428 (11 L. R. A. 534), this court said:

"The question to be considered in these cases is whether the want of statutory notice has resulted in depriving sufficient electors of the opportunity to exercise their franchise to change the result of the election; and the election should not be set aside when it is apparent that the result would not have been different had all the electors voted."

We are here dealing with an election which is past and asked to declare it void because a particular detail of the law relative to notice has not been strictly observed, without any showing that thereby any elector was deprived of his right to vote or in any way misled or that the result was affected by the irregularity complained of. The validity of an election does not involve the technical question of jurisdiction as in a case where the court is acting judicially be-

tween litigating parties.    Conceding as mandatory the statutory requirements that general notice of time, place and purpose of a special election be given the public by posting and publishing for the times and in the manner outlined, the essential requirements to that end have been substantially complied with.

"Considerable liberality is, however, allowed even in these (special) elections and it is a rule of pronounced authority that the particular form and manner pointed out by a statute for giving notice is not essential, provided, however, there has been a substantial compliance with statutory provisions."    9 R. C. L. p. 992.

Proper election notices affording the requisite information were posted and displayed in more than the required number of places, and published in newspapers for the designated time.    No provision of the act declares an election void if each particular detail for giving notice has not been strictly observed.

The order dismissing plaintiff's petition will stand affirmed.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, and FELLOWS, JJ., concurred.    WIEST, J., concurred in the result.