FRACTIONAL SCHOOL DISTRICT NO. 1, BARRY TWP., *v.* TOWNSHIP SCHOOL DISTRICT OF BARRY TWP.

1. SCHOOLS AND SCHOOL DISTRICTS—PRIMARY DISTRICT MAY BE CONSOLIDATED WITHOUT ITS CONSENT.

On organization of township into single school district by majority vote of school electors of township, primary school district may be compelled to become consolidated therewith without its consent (2 Comp. Laws 1929, § 7131).

2. EVIDENCE—JUDICIAL NOTICE—BARRY TOWNSHIP.

Court may take judicial notice of fact that township of Barry in Barry county is approximately six miles square, and contains but 36 sections of land.

3. SCHOOLS AND SCHOOL DISTRICTS—ORGANIZATION OF TOWNSHIP
    SCHOOL DISTRICT—NOTICE OF ELECTION.

   Election to organize township into single school district, being
       special, statutory provisions as to notice must be deemed
       mandatory (2 Comp. Laws 1929, § 7136).

4. SAME—IRREGULARITY.

   Where township had no town hall, omission of township clerk to
       strike out words "town hall" in notice of election to organize
       township into single school district, as place where election
       was to be held, and inserting in lieu thereof name of desig-
       nated schoolhouse, was mere irregularity, not fatal to election,
       where name of schoolhouse was given below, and no one was
       misled as to place where election was to be held.
   POTTER, J., dissenting.

Appeal from Barry; McPeek (Russell R.), J.
Submitted April 19, 1932. (Docket No. 154, Cal-
endar No. 36,341.) Decided June 6, 1932.

Petition in the nature of *quo warranto* by Frac-
tional School District No. 1 of Barry Township and
others against Township School District of Barry
Township and others to test the legality of the or-
ganization of defendant school district. Judgment
for defendants. Plaintiffs appeal. Affirmed.

*Carney & Carney,* for plaintiffs.

SHARPE, J. What is commonly spoken of as the
"School code" was enacted by the legislature in
1927 (Act No. 319). It appears in the compiled laws
of 1929 as § 7094 *et seq.* Section 7131 reads as
follows:

"Whenever a majority of the qualified school
electors of any organized township present and vot-
ing, vote in favor of organizing said township into
a single school district, such township shall, after
the election of the board of education as hereinafter

provided, be a single school district and shall be governed by the provisions of this act.''

Provision is thereafter made for the presentation of a petition therefor to the township board of the township and the submission of the question to a vote of the qualified school electors therein.

At a special election, held in the township of Barry, in the county of Barry, pursuant thereto, it appeared that 183 votes were cast in favor of, and 114 against, the proposition. Members of the township school board were thereafter duly elected and assumed to act as such, whereupon the officers of the plaintiff districts commenced this proceeding by *quo warranto* to test the legality of the organization of the township district and the right of such persons to hold such offices. A judgment was entered for defendants, from which plaintiffs have taken this appeal.

The first question presented is thus stated by counsel for appellants:

''Can a primary school district be compelled to become consolidated without its consent?''

In our opinion, decision of this question is controlled by *Perrizo* v. *Kesler,* 93 Mich. 280. In that case the constitutionality of Act No. 176, Pub. Acts 1891 (2 Comp. Laws 1915, § 5892 *et seq.*), which authorized the organization of any township in the upper peninsula into a single school district upon certain steps being taken by the qualified electors of the township, was involved. One of the claims made was, ''That the act destroys the essential attributes of the primary school-district, as it existed at the formation of the Constitution,'' and it was held ''that our Constitution expressly relegates the primary schools to the discretion of the legisla-

ture." This decision has been cited with approval in *Keweenaw Ass'n* v. *School-District,* 98 Mich. 437; *Pingree* v. *Board of Education of Detroit,* 99 Mich. 404; *Attorney General, ex rel. Kies,* v. *Lowrey,* 131 Mich. 639; *Burton* v. *Koch,* 184 Mich. 250; and is in line with our holdings as to the control of the legislature over cities and villages. See *Kingsford* v. *Cudlip,* 258 Mich. 144.

It is also urged that the notice of election given to the voters was insufficient. It was in the following form:

"NOTICE OF ELECTION.

"Notice to the qualified school electors of the township of Barry, county of Barry, Michigan, and the legal school electors of fractional districts the schoolhouse of which is in said township:

"The township board of said township has called a special election for the purpose of submitting the question of organizing said township into a township school district as provided under Act No. 319, Pub. Acts 1927, as amended, at the town hall of said township on the 28th day of July, A. D. 1931.

"The polls will be open at 10 o'clock a. m., and remain open until five o'clock p. m., on said above-named day and date.

"Dated this 3d day of July, A. D. 1931.

(Signed) "VERNON WEBSTER,

"Twp. Clerk.

→ →"Election to be held at the Tooles schoolhouse."

The defect complained of is in the designation of the place for holding the election. The testimony discloses that there was no town hall in the township. In using the form the township clerk should have inserted the name of the schoolhouse in its stead, but neglected to do so, and added the words stating the place where the election would be held,

with an arrow pointing to it as indicated. For general election purposes the township is divided into two election precincts, one of them being located in what is spoken of as the Dietrich building in Hickory Corners, and the other in a hall owned by the Community Club in the village of Delton. When this petition was presented to the township board, it determined that there should be but one place in the township for the holding of the election, and, as testified to by the supervisor, selected the Tooles schoolhouse therefor "because it was the nearest public building to the center of the township;" that the schoolhouse was known by that name because "there was a family of Tooles lives there in that neighborhood for a great many years." We may take judicial notice of the fact that the township of Barry is approximately six miles square, and contains but 36 sections of land.

The election being a special one, the statutory provisions as to notice must be deemed mandatory. In *Hulan* v. *Township of Greenfield,* 229 Mich. 273, the sufficiency of the publication of a notice of a special election was involved in an ouster proceeding. In the opinion, written by Mr. Justice STEERE, the question was discussed at length, and many authorities cited and quoted from. The conclusion reached is thus stated:

"We are here dealing with an election which is past and asked to declare it void because a particular detail of the law relative to notice has not been strictly observed, without any showing that thereby any elector was deprived of his right to vote or in any way misled or that the result was affected by the irregularity complained of. The validity of an election does not involve the technical question of jurisdiction as in a case where the court is acting judicially between litigating parties. Conceding as

mandatory the statutory requirements that general notice of time, place and purpose of a special election be given the public by posting and publishing for the times and in the manner outlined, the essential requirements to that end have been substantially complied with."

The record before us does not disclose that any elector was dèceived as to the place where the election would be held, or was deprived of his vote thereby. It is apparent that anyone who saw and read the notice as posted would be informed that the election would be held at the Tooles schoolhouse, a place doubtless well known to all the electors of the township. The omission to so state in the body of the notice when it so clearly appeared in the line below, to which attention was directed by the arrow pointing to it must be deemed an irregularity only. As was said in *People, ex rel. Hartwick,* v. *Avery,* 102 Mich. 572, 574:

"The electors are not to be deprived of the result of their votes at an election by the mistake of election officers, when it does not appear to have changed the result. Under repeated decisions it is settled that the matters relied on here were irregularities, and did not invalidate the election."

In *Gardner* v. *Board of School District,* 248 Mich. 134, 137, Mr. Justice Wiest, speaking for the court, said:

"The election was 'called to be held in schoolhouse in said school district,' etc. In the district are two school buildings; one used as a kindergarten, and situated across the road from the school building proper. Because of the two school buildings we are asked to hold that the place of election was indefinite. There is no evidence of confusion as to place and no possible reason for the voters not understanding

where they were to vote. We are not impressed with the point urged."

The judgment is affirmed.

Clark, C. J., and McDonald, North, Fead, Wiest, and Butzel, JJ., concurred with Sharpe, J.

Potter, J. (*dissenting*). The proceedings taken did not, in my opinion, result in the formation of a township consolidated school district, and the abolition of the several local school districts and fractional school districts into which the township of Barry was and is organized.

Our government, though based upon a written Constitution, is grounded upon a recognition and continuance of local self-governmental subdivisions whose affairs are controlled by local officials elected by popular vote of the inhabitants of the community. These are the nurseries of democracy, the foundation of representative government. *People, ex rel. Le Roy,* v. *Hurlbut,* 24 Mich. 44 (9 Am. Rep. 103).

As said by counsel for plaintiffs:

"If the claim of the defendants is to be sustained, then any populous community whenever its school tax becomes burdensome, whenever it needs a new schoolhouse, whenever it covets the property of peaceful primary school districts, may, by its greater voting power, make war upon its neighboring primary districts, practically confiscate the property of its neighbors for purely selfish purposes against the will and vote of entire districts, and hatred created by this same law of might in this or any other like controversy will continue during the lifetime of the citizens involved."

The act involved, if construed as contended for by defendants, is, as said by Mr. Justice Cooley of the legislative act involved in *Swart* v. *Kimball,* 43

Mich. 443, tyrannical and oppressive in the last degree, and such as no legislature, even if its power was ample, should ever have passed.

In *Perrizo* v. *Kesler,* 93 Mich. 280, relied upon by defendants to sustain the validity of the act here involved, the injustice and inequity of the statute and the proceedings thereunder was emphasized. The legislation, and the action taken under the statute, if construed as contended for by defendants, is so arbitrary, unjust, and tyrannical that the statute, in derogation of the spirit of our institutions, is to be strictly construed.

The judgment entered in this case should be reversed.

The so-called "School code," Act No. 319, Pub. Acts 1927 (2 Comp. Laws 1929, § 7094 *et seq.*), consists of two parts. Part 1 (2 Comp. Laws 1929, § 7094 *et seq.*) is entitled, "Classification, formation and organization of school districts" and part 2 (2 Comp. Laws 1929, § 7351 *et seq.*) is entitled, "General school law."

Section 7389, 2 Comp. Laws 1929, a part of the "General school law," provides:

"No district shall be divided into two or more districts without the consent of the majority of the qualified school electors of said district present and voting at a meeting called for such purpose, and two or more districts shall not be consolidated without the consent of a majority of the qualified school electors of each district present and voting at a meeting called for that purpose."

What is the "General school law?"

"General Law. Law which embraces all subjects of a class. Law operating on all of the same class alike." English Law Dictionary, p. 492.

A general law is one "relating to a whole *genus* or kind, to a whole class or order; whether of per-

sons, relations, things or places. Opposed to local, private or special. * * * Opposed to partial. * * * Opposed to particular. * * * Opposed to private or individual. * * * Opposed * * * chiefly to special." Anderson Law Dictionary, p. 487.

General laws are "laws that are framed in general terms, restricted to no locality and operating equally upon all of a group of objects which, having regard to the purpose of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves." 2 Bouvier Law Dictionary (Rawle's 3d Rev.), p. 1347.

"The word general is derived from *'genus'* and technically relates to a whole *genus* or kind or to a whole class or order." *Puget Sound Publishing Co.* v. *Times Printing Co.,* 33 Wash. 551, 558 (74 Pac. 802).

"The definition of the word 'general' found in 1 Burrill's Law Dictionary, p. 681, is, 'that which comprehends all, the whole, as distinguished from special, which signifies something designed for a particular purpose.' " *B. & O. R. Co.* v. *Supervisors,* 3 W. Va. 319.

"General" means "having relation to all; common to all; as, Adam our general sire. Milton." Webster's Dictionary. *Koen* v. *State,* 35 Neb. 676 (53 N. W. 595, 17 L. R. A. 821).

"The adjective 'general,' as defined by Webster's Dictionary, means, 'Relating to a *genus* or kind; pertaining to a whole class or order; belonging to a whole rather than to a part.' " *Joost* v. *Sullivan,* 111 Cal. 286 (43 Pac. 896).

"General. (1) Whole; total; that which comprehends or relates to all or a chief part; opposed to a particular object or relation; the public; the interest of the whole." *Duffy* v. *Duffy,* 114 Iowa, 581 (87 N. W. 500).

In my opinion, though the statute invoked by defendants as the basis of their action is analogous to the local, special legislation applicable to a particular locality involved in *Perrizo* v. *Kesler, supra,* here, it has been incorporated in the so-called "school code," and, instead of standing as a piece of local special legislation applicable to a particular locality, is to be construed as subject to the operation of the provisions of the "General school law," and the provisions of section 7389 above quoted.

"No rule is better settled than, in construing a statute, effect must be given to every part of it. One part must not be so construed as to render another part nugatory and of no effect." *People* v. *Burns,* 5 Mich. 114.

This principle has been repeatedly recognized and declared by this court. *Attorney General* v. *Bank of Michigan,* Harr. Ch. 315; *Attorney General, ex rel. Zacharias,* v. *Detroit Bd. of Education,* 154 Mich. 584; *Robinson* v. *Harmon,* 157 Mich. 266; *In re Kreiner,* 156 Mich. 296. It is the general rule. 2 Lewis' Sutherland, Statutory Construction (2d Ed.), § 443. Independent of direct legislative direction as to construction, as involved in this case, where there is a "general school law" applicable to all public primary schools, the general rule is that both provisions of the statute shall, if possible, be permitted to stand. Each may stand modified by the language of the other. · As applied to this case, the provisions of the statute providing for the formation of township school districts should be construed with 2 Comp. Laws 1929, § 7389, and both must be complied with to create a township consolidated school district. Both were not complied with, in this case. Judgment should be reversed, and judgment directed to be entered for plaintiffs.