BURTON *v.* KOCH.

INGERSOLL *v.* LINDSAY.

BURTON *v.* LINDSAY.

HOLT *v.* LINDSAY.

OSBORN *v.* LINDSAY.

1. SCHOOLS AND SCHOOL DISTRICTS — CONSTITUTION — CONSTITU-
TIONAL LAW—SPECIAL AND LOCAL ACTS.

Prior to the adoption of the new Constitution, the legisla-
ture of the State had authority to create school districts
by special enactment which became controlling in the dis-
trict so created.

2. SAME—UNIFORM LEGISLATION—STATUTES.

It was the intention of the legislature, in enacting Act No.
146, Pub Acts 1913, to establish uniform qualifications
for voters in all school districts of the State, and by the
language of such amendment to the general law it was
clearly provided that no prior special legislation should
remain in effect to qualify the general rule laid down by
that act relative to the qualifications of such voters;
modifying section 17 of Act No. 144, Pub. Acts 1881, as
amended in 1909, Act No. 83; the Act of 1913 changed
the limitation as to school districts affected, also qualify-
ing the effect of section 10, chap. 13, of the general law
which excepted from the provisions thereof such school
districts as were affected by previous special legislation.

3. CONSTITUTIONAL LAW—TITLE—AMENDMENT.

Act No. 146, Pub. Acts 1913, amending and re-enacting sec-
tion 17, chap. 21, Act No. 164, Pub. Acts 1881, is valid
and sufficient though its effect is to also amend section
10, chap. 13 (2 Comp. Laws, § 4774, 4 How. Stat. [2d Ed.]
§ 10013), of the same act, and notwithstanding that the
amendatory statute did not attempt to re-enact at length
the provisions of the section indirectly amended, such
action not being required by Art. 5, § 21, of the Constitu-
tion; and the effect of the statute of 1913 was to amend
constitutionally the provisions of said section 10 excepting

school districts which had been created or were governed by special acts from the operation of the law. The amending act sufficiently complied with the requirements of the Constitution by re-enacting section 17, chap. 2, of Act No. 164.

4. SAME—CONSTITUTIONALITY OF ACT — CLASSIFICATION — POPULATION.

Act No. 251, Pub. Acts 1913, is a general law based upon the classification of school districts according to population and providing that in districts coextensive with a city having 250,000 inhabitants or more, the board of education shall consist of seven, members elected by the voters of the entire district qualified to vote for school inspectors.

5. SAME—REFERENDUM—LOCAL ACTS.

Provision for referendum was unnecessary to the validity of Act No. 251, *supra*, because it was not of a local character.

6. SAME—ELECTORS—ELECTIONS.

The legislature is authorized to designate electors of the school district and their qualifications need not be the same as in the case of constitutional electors.

7. SAME.

The effect of the law is not nullified by limiting the voters to persons who are qualified to vote upon school matters.

8. SAME.

If the court cannot clearly see that in the exercise of legislative power the restrictions imposed by the Constitution have been exceeded, the statute must be sustained as valid.

9. SAME—AMENDMENTS—ELECTORS.

The provisions of section 4 of Act No. 146, referring to the majority of electors having the qualifications to vote at elections for school inspectors and another portion referring to a majority of the qualified voters of the city should be reconciled and construed to mean persons qualified to vote for school inspectors; the latter reference having a general meaning in harmony with the purpose of the act and the preceding phrase.

BROOKE, C. J., and McALVAY, J., dissenting.

Certiorari to Wayne; Van Zile, J. Submitted Oc-

tober 16, 1914. (Calendar Nos. 26,456, 26,457, 26,458, 26,459, and 26,460.) Decided February 10, 1915.

Mandamus by Clarence M. Burton against Max C. Koch, treasurer of the city of Detroit, and others, to require the respondents to provide necessary ballots to submit to the electors of the city of Detroit the question whether Act No. 251, Pub. Acts 1913, creating a school board of seven members for certain municipalities should be adopted: same by Laura F. Osborn, Frederick H. Holt, Clara W. Ingersoll, and by said Burton against Richard Lindsay, and other city officials, constituting the members of the board of registration in said city of Detroit, to enforce other requirements of Act No. 251, Pub. Acts 1913. The five cases were consolidated and heard as one before the circuit court which entered an order granting the writ. Respondents bring certiorari. Affirmed.

*Richard I. Lawson* and *Edmund Atkinson,* for appellants.

*Keena, Lightner, Oxtoby & Oxtoby,* for appellees.

OSTRANDER, J. Act No. 164, Pub. Acts 1881, contains, as its title indicates, many different provisions relating to public instruction and primary schools. It is a consolidation of the laws relating to these important subjects. Many of its provisions had been in force since 1846. It is divided into 13 chapters, each subdivided into several sections. Each of its provisions applies, in terms, to all school districts in the State.

It goes without saying that, notwithstanding the generality of its provisions, the legislature had authority to erect school districts by special enactment, and that in such districts the provisions of such special enactment would be controlling. But upon this point the legislature left no room for doubt. The con-

cluding section of the last chapter (section 11) recites the acts and parts of acts repealed, and the next preceding section (10) reads:

"All provisions of this act shall apply and be in force in every school district, township, city and village in this State, except such as may be inconsistent with the direct provisions of some special enactment of the legislature."

This last-mentioned qualifying section has the significance, also, of a declaration that, when said Act No. 164 was passed, there were in existence school districts created and governed by special legislative enactments.

The general subject of chapter 2 of Act No. 164 is "formation, alteration, meetings, and powers of districts," and section 17 thereof, not as enacted, but as amended in 1909 (Act No. 83), reads as follows:

"In all school elections every citizen of the United States of the age of twenty-one years, male or female, who owns property which is assessed for school taxes in the district, or who is the parent or legal guardian of any child of school age included in the school census of said district, and who has resided in said district three months next preceding such election, shall be a qualified voter. On the question of voting school taxes, every citizen of the United States of the age of twenty-one years, male or female, who owns property which is assessed for school taxes in the district, and who has resided in the district, as above stated, shall be a qualified voter: *Provided,* that the purchaser of land upon a land contract, who actually pays the taxes upon such land and resides thereon, may vote upon all questions; and where a husband and wife own property jointly and same is assessed for school taxes in the school district, each may, if otherwise qualified, vote upon all questions including the question of raising money."

The situation being that because of various local acts—special enactments—the provisions of section 17 of chapter 2 were not controlling in all school dis-

tricts, and that in some districts persons were voters who would be excluded in others, the legislature, by Act No. 146 of the Public Acts of 1913, undertook to establish 'uniform qualifications for voters in all school districts of the State. No one can reasonably be in any doubt about this. How should the legislative purpose be effected? There were, perhaps, several ways. One way is suggested in the opinion of Mr. Justice BROOKE. But clearly that is not the only way of indicating the legislative purpose. Indeed, it is not the best way, since it is evident that the legislature intended there should be no doubt about the application of the amended law to every school district in the State. Intending to establish uniform qualifications for voters, the legislature by Act No. 146 of the Public Acts of 1913, instead of amending said section 10 of chapter 13 by way of a proviso or otherwise, amended 'section 17 of chapter 2 so as to indicate precisely the purpose to be accomplished. It removed, by the amendment, the qualifying effect of said section 10 with respect to the qualifications of voters as plainly as though it had amended some other section or had added a new section. Where before, upon reading the two sections together, we found the universal application of said section 17 limited and qualified by said section 10, we now find it unqualified. It made it plain, by the words of the amendment, that no special legislation should be interposed to qualify the general legislation it was enacting. And no other method of expressing the legislative purpose could make that purpose more certain than it is made.

My Brother BROOKE says, and in view of the reasoning he indulges he is obliged to say, that section 17 has not been amended, and he bases his contention upon the fact that the words added to the section by the legislature add nothing to the previous sweeping language of the section. In terms it has always ap-

plied to all school districts. It does no more now. This seems to me to be a curious begging of the point at issue. Certainly words have been added to the section, and this was an amendment of it, whatever the effect of it may be. Certainly its apparent sweeping application has always before been limited by said section 10. Certainly it was, before amendment, read with said section 10 to discover its meaning and effect. Just as certainly, when now read with that section, it has a different meaning and effect from what it had before.

We ought not to confuse the effect of the amendment with the constitutional duty of the legislature to indicate an amendment in a particular way. In effect, every special enactment containing provisions unlike those now found in said section 17 is amended or repealed. It is not a new thing to have many existing legislative enactments thus affected by new legislation. *The section amended* was re-enacted and republished at length as the Constitution provides. The Constitution has been precisely obeyed and the effect of the amendment is, and was intended to be (and no one can misunderstand the meaning of the act as amended), to provide uniform qualifications for voters in all school districts of the State.

I come now to consider Act No. 251, Public Acts of 1913. It is inartificially drawn, and contains, apparently, inconsistent provisions. An analysis leaves little or no doubt concerning the legislative purpose, or the real meaning of the law. It is a general law, based upon a classification of the school districts of the State according to population. *People* v. *Brazee,* 183 Mich. 259 (149 N. W. 1053) ; *Hayes* v. *Auditor General, ante,* 39 (150 N. W. 331). The expressed purpose is that, in districts coextensive with a city having a population of 250,000 or more the board of education shall consist of seven members elected

at large by the electors of the whole district qualified to vote for school inspectors. It provides for a referendum to determine whether it shall or shall not be effective in a particular district. This was unnecessary, because the act is not local in character. The referendum is to the electors of the school district. Who they are is ascertained from section 17 of Act No. 146, Pub. Acts 1913, hereinbefore considered. The electors of a school district may be designated by the legislature, and their qualifications need not be identical with those of constitutional electors. *Belles* v. *Burr,* 76 Mich. 1 (43 N. W. 24) ; *Pingree* v. *Board of Education,* 99 Mich. 404 (58 N. W. 333). See, also, *Attorney General* v. *Lowrey,* 131 Mich. 639 (92 N. W. 289) ; *Perrizo* v. *Kesler,* 93 Mich. 280 (53 N. W. 391) ; *Menton* v. *Cook,* 147 Mich. 540 (111 N. W. 94) ; *Attorney General* v. *Board of Education,* 154 Mich. 584 (118 N. W. 606) ; *Board of Education* v. *Smith,* 183 Mich. 428 (149 N. W. 978), upon the point that the legislature under the Constitution has substantially complete control over school districts. As the legislature might have omitted the referendum, it does not nullify the law that it is limited to persons who are qualified to vote upon school matters — persons who will elect the school officers under the law. It is true that section 4 of the act refers in one place to a majority of electors having qualifications to vote at elections for school inspectors and in another place to a majority of the qualified electors of the city, meaning, evidently, in both provisions, the same electorate. Considering that the persons qualified to vote according to the act are those possessing the qualifications to vote for school inspectors, the later reference in the same section to qualified electors of the city "voting thereon" may be given a meaning in harmony with the first provision and the general purpose of the act.

The court has nothing to do with the wisdom of this legislation. The legislative power, with certain constitutional limitations, is vested elsewhere. If the court cannot clearly see that, in the exercise of the power, constitutional restrictions have been exceeded, the law must be sustained.

For the reasons expressed, I am of opinion that the act is valid.

KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred with OSTRANDER, J.

BROOKE, C. J. (*dissenting*). In each of the foregoing matters the petitioner sought and obtained in the circuit court a writ of mandamus compelling the respondents in each case to perform an alleged duty affecting the election to be held in the city of Detroit on the 3d of November, 1914. Though brought by different persons and calling for the performance of different acts by the various respondents, the rights asserted by the various petitioners are based upon two legislative enactments, the constitutionality of which is questioned by the respondents in the several proceedings. By order of the court the five cases were consolidated and argued as one in this court and will be treated together.

The act first brought in question is No. 146 of the Public Acts of 1913. It follows:

"An act to amend section seventeen of chapter two of act number one hundred sixty-four of the Public Acts of eighteen hundred eighty-one, entitled 'An act to revise and consolidate the laws relating to public instruction and primary schools, and to repeal all acts or parts of acts contravening the provisions of this act,' being compiler's section four thousand six hundred sixty-two of the Compiled Laws of eighteen hundred ninety-seven, as last amended by act number eighty-three of the Public Acts of nineteen hundred nine.

184 Mich.—17.

"The people of the State of Michigan enact:

"Section 1.    Section seventeen of chapter two of act number one hundred sixty-four of the Public Acts of eighteen hundred eighty-one, entitled 'An act to revise and consolidate the laws relating to public instruction and primary schools, and to repeal all acts or parts of acts contravening the provisions of this act,' being compiler's section four thousand six hundred sixty-two of the Compiled Laws of eighteen hundred ninety-seven, as last amended by Act Number eighty-three of the Public Acts of nineteen hundred nine, is hereby amended to read as follows:

"Chapter II.

"SEC. 17.    In all school elections *including school elections held in districts organized and governed in whole or in part by a local act or acts, any provision in such local act or acts to the contrary notwithstanding,* every citizen of the United States of the age of twenty-one years, male or female, who owns property which is assessed for school taxes in the district, or who is the parent or legal guardian of any child of school age included in the school census of said district, and who has resided in said district three months next preceding such election shall be a qualified voter.    On the question of voting school taxes, every citizen of the United States of the age of twenty-one years, male or female, who owns property which is assessed for school taxes in the district, as above stated, shall be a qualified voter: *Provided,* that the purchaser of land upon a land contract, who actually pays the taxes upon such land and resides thereon, may vote upon all questions; and where a husband and wife own property jointly and same is assessed for school taxes in the school district, each may, if otherwise qualified, vote upon all questions including the question of raising money.

"This act is ordered to take immediate effect.

"Approved May 2, 1913."

We have indicated, by the use of italics, the amendatory language introduced into the section.    This section constitutes a part of the general laws of the State relating to primary schools, and specifies in detail the qualifications of electors in school matters.    Before

this amendment, by its terms, it applied to every school district in the State of Michigan. Its operation, however, was limited by 2 Comp. Laws, § 4774 (§ 10) 4 How. Stat. [2d Ed.] § 10014) :

"All provisions of this act shall apply and be in force in every school district, township, city and village in this State, except such as may be inconsistent with the direct provisions of some special enactment of the legislature."

The city of Detroit is and has been since 1869 operating its school system under a special enactment of the legislature which was amended in 1873, again in 1881, again in 1883, and again in 1891. It contains many direct provisions inconsistent with the provisions of the general school act, of which section 17, above quoted, is a part; and it was to preserve the rights of the city of Detroit and other cities of the State operating under special acts that section 10, above quoted, was enacted. By the amendment of 1891 (Local Acts 1891, No. 350) to the free school act of the city of Detroit (Laws 1869, No. 233), the qualifications of electors were defined as follows:

"SEC. 25. The qualifications of electors in the school district comprising the city of Detroit, shall be the same as those prescribed by the laws of this State and the United States for voters at large at general city elections: *Provided,* that women of or above the age of twenty-one years shall be qualified to vote in said school district upon any such measures or questions, including the question of free text books submitted as aforesaid, subject to the same qualifications and regulations as those applicable to and governing the votes of male citizens upon such measures or questions as aforesaid."

Other provisions of the charter of the city of Detroit, which is a special enactment of the legislature, relative to school elections and the qualifications and registration of voters, are inconsistent with the terms of the act governing the schools generally through-

out the State.   See paragraphs 8, 23, 46, 89, and 595 of the Charter Compilation of 1904.

The question involved is whether it was competent for the legislature, by the insertion of the italicized words in section 17, to impose upon the city of Detroit, in school elections, the same electoral qualifications as obtained throughout the State in school districts not operating under special legislation.   Heretofore in the city of Detroit all constitutional electors have been permitted to participate.   In addition thereto, all women of or above the age of 21 years have enjoyed the same privilege, if they were otherwise qualified.   Section 17 restricts the exercise of the franchise in school matters in some respects, and it enlarges it in others.   By its terms, those citizens, only, of the age of 21 years, male or female, who own property which is assessed for school taxes in the district, or who are parents or guardians of children of school age, are permitted to vote.   This would exclude all men and women over 21 years of age who neither own property subject to taxation for school purposes, nor stand in *loco parentis* to children of school age. In the matter of residence, section 17 extends the franchise to persons who would not be entitled to vote under the special act governing the qualifications of electors in the city of Detroit.   It is therefore apparent that the change, which it is claimed, on behalf of petitioners, has been effected by the amendment to section 17, is one of very great importance.

As we understand the position of petitioners, it is their claim that, by the interpolation of the words italicized in section 17, section 10 is not repealed, but is so amended as to permit the provisions of section 17 to become operative in districts operating under special acts.   Article 5, § 21, of the Constitution of 1909, provides:

"No law shall be revised, altered or amended by

reference to its title only; but the act revised and the section or sections of the act altered or amended shall be re-enacted and published at length."

Under the claim of counsel that, by virtue of the amendment to section 17, an amendment by implication was wrought in section 10, it might well be held that to approve said claim would be to ignore the constitutional provisions above quoted. We find it unnecessary, however, to base a determination upon this point. A careful examination of the whole of section 17 shows that, in fact, it was not amended. The opening words of the section, "in all school elections," includes, in the broadest possible terms, elections held in districts governed by local acts, as well as those operating under general laws. The interpolation of the italicized words adds nothing to the sweeping language which precedes that. The obvious purpose of the legislature in inserting the words in question was to restrict the operation of section 10, quoted *supra*. What they apparently desired to do was to amend section 10 so as to make it read as follows:

"All the provisions of this act shall apply and be in force in every school district, township, city, and village in this State, except such as may be inconsistent with the direct provisions of some special enactment of the legislature. Section 17 of this act, however, shall apply and be in force in every school district."

The purpose of the legislature was not to change or amend any of the provisions of section 17, but it was to make those provisions applicable to those districts operating under special enactments of the legislature.

We are forced to the conclusion that it was not competent for the legislature, under a title which purported to amend section 17 only, to amend section 10, which was not mentioned either in the title or body

of the act. The act must therefore fail. The relief granted petitioners, so far as it is predicated upon the provisions of Act 146, should have been denied.

We next come to a consideration of Act No. 251, Pub. Acts 1913. The title follows:

"An act to provide for a board of education for cities having a population of two hundred fifty thousand or over and comprising a single school district; to fix their terms of office, and the manner of the nomination and election of the members thereof."

Section 1 provides for a board of education of 7 members, elected at large, to take the place of 18 members at present elected one from each ward of the city.

Section 4 is as follows:

"The provisions of this act shall not take effect in such city which comprises a single school district until approved by a majority of the electors having qualifications to vote at elections for school inspectors, voting thereon, in such city, at the next general election held after the government census shows such city has two hundred fifty thousand inhabitants or more. * * * If a majority of the qualified electors of the city, voting thereon shall vote in favor of the adoption of this act then the provisions hereof shall be in full force and effect in such city and not otherwise."

Article 5, § 30, of the Constitution, provides:

"The legislature shall pass no local or special act in any case where a general act can be made applicable, and whether a general act can be made applicable shall be a judicial question. No local or special act shall take effect until approved by a majority of the electors voting thereon in the district to be affected."

The question as to whether it is competent for the legislature to pass a general act relating to educational matters in the city of Detroit, alone, is not before us. It is sufficient to say that the legislature attempted to do no such thing. It is apparent that, while the language employed in the title indicated

legislation general in its scope, the legislature recognized its special or local character by attempting to provide for a referendum, as required by article 5, § 30, *supra.* The question presented is whether the referendum provided in the act is such a referendum as is contemplated by the Constitution.

Article 3, § 1, of the Constitution, defines electors as male inhabitants who are citizens of the United States; males residing in this State June 24, 1835; male inhabitants residing in this State January 1, 1850; male inhabitants of foreign birth residing in this State May 8, 1892, and who prior to that date declared their intention of becoming citizens of this State; male civilized native-born Indians.

Section 4 of Act 251 prescribed that those only may vote upon the referendum who have the qualifications to vote at elections for school inspectors. We have seen that those qualifications, whether they be governed by section 17 of the general school law, or by section 25 of the local act governing the city of Detroit, are in many respects different from the qualifications as defined in the Constitution. In the first instance many constitutionally qualified electors would be excluded from participating in the election, and in the second instance many would be permitted to exercise the franchise who are not so qualified.

In the case of *Rutledge* v. *Board of Supervisors,* 160 Mich. 27 (124 N. W. 945), it was held that "a qualified elector," within the meaning of this statute, is one "who meets the requirements of section 1, art. 3, of the Constitution of Michigan."

It is said in Cooley's Const. Lim. (6th Ed.) p. 573, that:

"Whenever the Constitution has prescribed the qualifications of electors, they cannot be changed or added to by the legislature or otherwise than by an amendment to the Constitution."

See, also, *Coffin* v. *Election Commissioners*, 97 Mich. 188 (56 N. W. 567, 21 L. R. A. 662) ; *Belles* v. *Burr*, 76 Mich. 1 (43 N. W. 24) ; *State* v. *Tuttle*, 53 Wis. 45 (9 N. W. 791).

But we are not concerned with the power of the legislature to define the qualifications of electors for school purposes. The question is whether the constitutional convention, when it used the term "electors" in article 5, § 30, referred to electors as defined in another section of that instrument itself, or referred to electors of a particular class, whose qualifications have been defined by legislation. We think it clear that it was the intention of the framers of the Constitution to provide, in case a local or special act were passed by the legislature, that it should be submitted, for approval, to the electors (constitutional electors) of the district to be affected. The term "district," used in the section, has no reference to a school district (a term not used in the Constitution) but means simply territory.

In the earlier portion of section 4 it is provided that the act shall not take effect—

"until approved by a majority of the electors having qualifications to vote at elections for school inspectors, voting thereon."

The concluding paragraph of section 4 is that:

"If a majority of the qualified electors of the city, voting thereon shall vote in favor of the adoption of this act then the provisions hereof shall be in full force and effect in such city and not otherwise."

These two inconsistent provisions occur in the same section. By the last-quoted language it is apparent that the act cannot go into effect until approved by a majority of the qualified electors of the city. Standing alone, this language would undoubtedly mean that the act must be approved by a majority of the constitutionally qualified electors of the city; but

we see by reference to the earlier portion of the section that many such electors are excluded from exercising their right to vote upon the question.

We are of the opinion that it is not possible to render the act valid, even if otherwise unobjectionable, by striking out the words "having qualifications to vote at elections for school inspectors," occurring in the earlier part of the section.

It was said in *Burdick* v. *Lumber Co.*, 167 Mich. 673 (133 N. W. 822), that:

"Courts should not allow themselves to resort to freedom of interpretation or forced construction in order to save a law which is ambiguous or defective, where it can easily be remodeled by legislation."

The next session of the legislature will occur within three months from the present time, when, if the matter is deemed of importance, it undoubtedly will receive attention.

We are of the opinion that Act 251, in question, is and was intended by the legislature to be a local or special act, within the meaning of the Constitution, and such an act as requires the approval of the majority of the electors voting thereon within the district to be affected. The referendum provided by the act in section 4 is not the referendum contemplated by the Constitution, and the act must therefore fail. No costs will be awarded.

MCALVAY, J., concurred with BROOKE, C. J.