ATTORNEY GENERAL, *ex rel.* COMMON COUNCIL OF THE CITY OF DETROIT, *v.* MARX.

1. MANDAMUS—QUO WARRANTO—TITLE TO OFFICE—PROPER REMEDY —REVIEW.

On certiorari to review mandamus proceedings to compel the mayor and board of education of the city of Detroit to fill alleged vacancies on the latter board, the Supreme Court will decide the questions presented which are of great public interest, they having been fully briefed and argued, although quo warranto and not mandamus is the usual and proper remedy.

2. SAME.

The mere fact that in mandamus proceedings the question of title to office is incidentally involved will not necessarily render that remedy an improper one.

3. SCHOOLS AND SCHOOL DISTRICTS—CITIES—SINGLE SCHOOL DISTRICT—STATUTES—CONSTRUCTION.

Act No. 251, Pub. Acts 1913 (2 Comp. Laws 1915, § 5867 *et seq.*), providing "that the board of education of any city having a population of 250,000 which comprises a single school district shall consist of seven school inspectors," applies to the city of Detroit; "single" signifying "principal" or "dominating" and not one; and "comprises" being a synonym of "embrace"; although the city in its rapid growth from time to time enlarged its territorial limits by taking in territory which did not immediately go into the school district, and also territory was taken into the school district which was not within the limits of the city.

4. STATUTES—CONSTRUCTION—INJUSTICE.

A statute should not be given a construction which would create hardship and injustice if it can be avoided.

Certiorari to Wayne; Mandell, Williams, and Gilday, JJ. Submitted June 11, 1918. (Calendar No. 28,-409.) Decided September 28, 1918.

Mandamus by the Attorney General, on the relation of the common council of the city of Detroit, to

compel Oscar B. Marx, mayor of the city of Detroit, and the board of education of the city of Detroit, to fill alleged vacancies on the board of education. From an order denying the writ, plaintiff brings certiorari. Affirmed.

*Walter C. McNiel,* for appellant.

*Donnelly, Hally, Lyster & Munro* (*Divie B. Duffield* and *Edmund Atkinson,* of counsel), for appellees.

KUHN, J. There is no public activity which more intimately affects the welfare of the community than that of its schools and means of education. As in all the communities of our State, the citizens of the city of Detroit have been keenly alive to the necessity of safeguarding and improving the education of their children. As a result, after years of agitation and discussion, a law providing for the present small school board to control and dominate educational matters was adopted. It is imperatively necessary, in order that this work can be carried on, that the legal status of this board be finally established. If questions concerning the right of its members to hold office can be urged, it is obvious that it becomes impossible for them to raise the necessary funds by bonding or otherwise to carry on this most important public service. In this proceeding it is urged that the present seven school inspectors, elected according to the provisions of said Act No. 251, Public Acts of 1913 (2 Comp. Laws 1915, § 5867 *et seq.*), were and are mere usurpers and their acts are absolutely null and void *ab initio.* In my opinion this situation presents a question of such great public importance that this court should finally decide the question presented upon the record now before us and finally fix the legal status of this board as to their right to hold office. It is true that proceedings in quo warranto might

have been instituted and that it has been held that mandamus is not the usual and proper remedy. This court has, however, at times, under similar conditions, waived the question of practice and has decided the questions presented when they have been fully briefed and argued, as has been done in this case. This, I think, we should now do. See *Lawrence* v. *Hanley,* 84 Mich. 399; *Lichtig* v. *Saginaw Circuit Judge,* 180 Mich. 667. Moreover, in this proceeding the principal contention was not a contention for title to office, except as that contention is incidental to the controversy that has arisen. On one side it is contended that the act creating the seven-member school board had no application to Detroit, because Detroit is not a single school district. On the other side it was contended that the act did have application to Detroit because, within the meaning of the act, Detroit was a single school district. There is authority in this State for the proposition that the mere fact that the application for a writ of mandamus incidentally involves the question of title to office, will not necessarily render the remedy an improper one. See *People, ex rel. Mead,* v. *Treasurer of Ingham Co.,* 36 Mich. 416; *Smith* v. *Eaton County Sup'rs,* 56 Mich. 217; *Ketcham* v. *Wagner,* 90 Mich. 271; *Huntley* v. *Finley,* 1180 McGrath's Mandamus Cases; *Wayne County Road Com'rs* v. *Board of Auditors,* 148 Mich. 255.

The judges who heard the matter in the court below were of the opinion that it is now too late to question the validity of the legislation, as in their opinion the questions here raised are foreclosed by the decision of this court in *Burton* v. *Koch,* 184 Mich. 250, and two decisions of the circuit court, which were accepted by the community at large as settled law. In the case of *Burton* v. *Koch, supra,* in the majority opinion sustaining the validity of this act, it was said with reference to the act:

"The expressed purpose is that, in districts co-extensive with a city having a population of 250,000, or more, the board of education shall consist of seven members elected at large by the electors of the whole district qualified to vote for school inspectors."

Now it is urged that at the time the question of whether or not said Act No. 251, Public Acts of 1913, should become effective in said school district of Detroit was submitted on November 7, 1916, the said city of Detroit did not comprise a single school district and (in the language of *Burton* v. *Koch, supra*) said school district of Detroit was not co-extensive with the said city of Detroit. This is based upon the fact that as the city in its rapid growth from time to time enlarged its territorial limits, it took in limited territories which did not immediately go into the school district, and also, as the school district was enlarged, very limited territory was also taken into the district which was not within the territorial limits of the city of Detroit.

The first section of the act in question reads as follows:

"The board of education of any city having a population of two hundred fifty thousand or over which comprises a single school district shall consist of seven school inspectors who shall be elected at large by the electors of the whole city qualified to vote for school inspectors in such municipality." * * *

The contention here urged by the plaintiff is that it was the purpose of the legislature in passing the act in question to make it apply only to cities having a population of 250,000 or over, wherein the board of education exercises jurisdiction in territory that was *co-extensive* and *coterminous* with the principal municipality. While such a construction of the legislation is possible, it is not in my opinion the natural construction which the words necessarily require. I agree with the contention of counsel for the defend-

ants that the word "single," as used in the act, should be held to signify "principal" or "dominating" and not "one." Plaintiff further contends that the word "comprises" means mutually inclusive and exclusive. I do not think it should be held to so mean, as in the ordinary meaning of the word it is held to be a synonym of the word "embrace." *De Nobili* v. *Scanda,* 198 Fed. 341. The city of Detroit has always had one dominating school district and at no time have there ever been two complete school districts within its borders. There have been only parts of other school districts in the outlying sections. It has comprised at all times a single school district. These outlying portions of districts have come in as the territorial limits have been expanded, and have been gradually brought into the school district as the conditions with reference to the territorial limits of the municipality and the school district were gradually adjusted in accordance with the provisions of law. The construction which the plaintiff asks for would create a hardship and injustice, which, under the rules of construction, should not be given to a statute if it can be avoided. In 2 Lewis' Sutherland Statutory Construction (2d Ed.), § 490, it is said:

"Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injustice; to favor public convenience, and to oppose all prejudice to public interests."

All the other questions, in my opinion, as to the validity of the legislation are finally determined by our decision in *Burton* v. *Koch, supra.*

For these reasons I think that the order denying the writ should be affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.