BUCK *v.* CORRIGAN.

1. SCHOOLS AND SCHOOL DISTRICTS — CONSOLIDATION VALID ALTHOUGH NAME BY WHICH KNOWN RATHER THAN CORPORATE NAME OF ONE DISTRICT WAS USED IN PROCEEDINGS.

> Proceedings for the consolidation of two school districts in the city of Saginaw, under the provisions of Act No. 9, Pub. Acts 1919, Ex. Sess., as amended by Act No. 175, Pub. Acts 1921, were valid although the name by which one of the districts had always been known was erroneously used, rather than its true corporate name, as provided by section 1, Act No. 166, Pub. Acts 1917, under which said district was operating, since its identity was plainly disclosed, no one was misled, the error was harmless, and there was substantial compliance with the statute.[1]

2. SAME—CITY CLERK TO CALL ELECTION FOR BOARD OF EDUCATION OF CONSOLIDATED DISTRICT.

> Where the two school districts in the city of Saginaw consolidated under Act No. 9, Pub. Acts 1919, Ex. Sess., and said Act did not provide for the election of a board of education, but did provide by section 6, as amended by Act No. 175, Pub. Acts 1921, that such consolidated district should operate under Act No. 166, Pub. Acts 1917, as amended, the city clerk was required, under section 20 of said act, to call a special election to fill said vacancies, and could incur indebtedness for said purpose on the faith and credit of the district.[2]

3. SAME—ELECTION OF MEMBERS OF BOARD OF EDUCATION TO BE HELD ON SAME DATE AS CITY ELECTION UNLESS OTHERWISE VOTED.

> Where the regular biennial election of the city of Sag-

[1]Schools and School Districts, 35 Cyc. p. 850; [2]Municipal Corporations, 28 Cyc. p. 578.

inaw is held on the first Monday in April in each odd year, the election of members of the board of education of the consolidated school district should be held on the same date, under section 13, Act No. 166, Pub. Acts 1917, that having been the time for holding elections in one of the districts prior to consolidation, unless the school electors·vote to change the election to the first Monday in June, as authorized in section 10 of said act, or unless otherwise provided by the legislature.[3]

Mandamus by Fred Buck to compel Shirley W. Corrigan, city clerk of the city of Saginaw, and others to call and hold a special election. Submitted January 5, 1926. (Calendar No. 32,342.) Writ granted January 13, 1926.

*Weadock & Weadock,* for plaintiff.

*Frank A. Picard,* for defendant city clerk.

*O'Keefe & O'Keefe,* for defendant Board of Education of Saginaw, East Side.

*A. Elwood Snow,* for defendant Board of Education of Union School District of Saginaw.

CLARK, J. In the city of Saginaw in April, 1925, there were two school districts, union school district of the city of Saginaw, being that part of the city on the west side of Saginaw river, and school district of the city of Saginaw, being the part of the city on the east side. A consolidation of the districts was proposed by resolutions pursuant to the provisions of Act No. 9, Pub. Acts 1919, extra session, as amended by Act No. 175, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 5870 [83-91]). We quote some sections:

"SECTION 1. Whenever any incorporated city of the State shall contain within its limits two separate school districts, formed or created under the general school law or under any local act or special law, the

---

[3]Municipal Corporations, 28 Cyc. p. 578.

said school districts may be consolidated into one school district in the manner hereinafter prescribed.

"SEC. 2. The governing body of either of the separate school districts may propose such union by resolution, setting forth the terms thereof, which resolution shall be transmitted to the other body and shall be acted upon by it. The governing body of either of the separate school districts shall propose such union when requested by petition of ten per cent. of the voters of its district. A quorum may act in each case and a majority of the body may pass such resolution. Whenever such resolution shall have passed each body a copy thereof shall be certified to by the secretary of each and filed with the city clerk. The city clerk shall thereupon submit the question of such union to the voters in each school district proposed to be united, at a regular or special election to be called for that purpose.

"SEC. 3. The resolution shall set up the name of the respective school districts; shall recite the real property owned by said district according to its legal description, and the personal property with reasonable particularity sufficient to enable it to be accurately identified; shall recite the bonded indebtedness of said district; and shall provide that when the majority of the electors of each district shall have voted in favor of consolidating the school districts, said consolidated school district shall acquire the property of each district.

"SEC. 4. That the procedure in said election, so far as the advertising of said election, casting of ballots and the counting and recording of same, shall follow, as near as may be, the method prescribed for city elections within said city, except as herein otherwise provided. * * *

"SEC. 6. That upon the determination of the result of said election, if it should appear that the majority of the electors of each school district voting on said question shall have voted in favor of consolidating the school districts, the consolidation shall thereupon be considered as immediately effective. The new consolidated district shall thereafter be considered as created, and shall operate under the general school law, the same being act number one hundred sixty-

six of the public acts of nineteen hundred seventeen, as amended.

"SEC. 7. When the electors of each school district have voted in favor of consolidating the school districts as herein provided, a certified copy of the resolution as adopted by the governing body of each district, and of the result of the election in each school district, shall be recorded in the register of deeds' office and shall, when so recorded, pass the legal title of the real and personal property of each district, to the new consolidated school district, and shall be sufficient evidence of such union."

An election was held and the voters of the districts favored consolidation and the election was so determined. The boards of education are to be commended for having acted sufficiently to keep the schools running, since the creation of the new district, although it is the position of the members of such boards that, if the consolidation be valid, they are no longer in office and have no authority to act for the new district. The clerk of the city of Saginaw was requested to call and to cause to be held a special election of the district for the purpose of electing seven members of a board of education to serve until their successors shall have been elected at a regular election and until they shall have qualified. The clerk refused, basing his refusal on the fact that he had no funds to pay the expense of such election. The city of Saginaw declined to pay or to become liable for the cost thereof. The boards of education of the two former districts would do nothing in this regard, being, as they said, without authority. This action of mandamus was instituted by plaintiff, a taxpayer of the district, against the clerk and the two former boards of education to compel the calling and holding of the special election.

The west side board supports, in its brief, the consolidation. The clerk takes a neutral stand, being willing to do his duty as it may be found. The de-

fense made by the former board of education of the east side district is, in substance, that there has been no consolidation.    Four questions raised require discussion.

"1. That no valid proceedings have been taken to consolidate the union school district of the city of Saginaw and the school district of Saginaw, east side."

The first point here made is that the resolutions proposing the consolidation do not set up the name of the east side district as required by section 3 of the act above quoted.    In the resolutions the name of the east side district is incorrectly stated as "Board of Education of the City of Saginaw, East Side."    The name of the west side district is stated correctly.    The resolutions set forth that the boards of education favor consolidation of the two districts, and that the boards resolve to consolidate the districts.    They also state separately the personal property owned by the districts, the real property according to its legal description, and the bonded indebtedness, as required by the statute.    The resolutions have no infirmity other than that above stated.    The resolution for the special election on the question of consolidating sets out in particular the wards of the city which compose the east side district.    The notice of registration contains the following:

"Notice is hereby given, That a registration of the qualified school electors of the above named school districts of the city of Saginaw (being wards one to twelve inclusive, and the twenty-first ward, which comprise the school district of the board of education of the city of Saginaw, east side, Michigan, and wards thirteen to twenty, inclusive, which comprise the school district of the union school district of the city of Saginaw," * * *

The notice of election is addressed:

"To the qualified school electors of the school dis-

trict of the board of education of the city of Saginaw, east side, Michigan, and the union school district of the city of Saginaw, Michigan:"

The question submitted to the voters was:

"Shall the union school district of the city of Saginaw, Michigan, and the board of education of the city of Saginaw, east side, Michigan, be consolidated in accordance with a resolution adopted by the said school districts and filed with the clerk of the city of Saginaw, Michigan, on the 29th day of August, A. D. 1925?"

Formerly the corporate name of the east side district was the Board of Education of the City of Saginaw, East Side. In 1919, the district went under Act No. 166, Pub. Acts 1917, and thereby agreeable to section 1 of that act its name was changed to School District of the City of Saginaw, but this change, it seems, was not observed. The corporate seal of the district in use for many years and still used contains the words "Board of Education of the City of Saginaw, East Side."

Annually the estimates of the district were certified to the board of estimates of the city in the name, "The Board of Education, East Side, Michigan." Since February, 1922, at least ten parcels of real estate have been conveyed to such district, the grantee, as named, being "The Board of Education of the City of Saginaw, East Side" or "The Board of Education, Saginaw, East Side." In 1924-25 a suit at law was prosecuted in the Saginaw circuit and in this court by the district as *Board of Education of the City of Saginaw, East Side,* v. *Board of Estimates of City of Saginaw,* 230 Mich. 495. It appears that the district borrowed money in the name of "School District of the City of Saginaw, East Side." It does not appear that the district has been known by, or has used, locally, its true name.

The will of the voters ought not to be thwarted except for grave and substantial reason.    Considering the name by which the district was known, the fact that it was plainly proposed to consolidate the two districts of the city, the fact that, although the district was not properly named, its identity was disclosed plainly by other descriptive matter, we conclude that no one could have been misled, that the error was harmless, that there has been substantial compliance with the statute and that the consolidation is not, for this reason, invalid.    See *Donough* v. *Dewey*, 82 Mich. 309; 1 McQuillin, Municipal Corporations, § 250; *People* v. *Pike*, 197 Ill. 449 (64 N. E. 393).

"2. That neither Act No. 9 of the extra session of the legislature of the State of Michigan of 1919, nor Act No. 166 of 1917, as amended, nor any other law of the State of Michigan, makes any provision for calling, holding and conducting a special election for the selection of a new board of education in a new consolidated school district."

The district now has no board of education.    Section 6, above quoted, Act No. 44, Pub. Acts 1921, repealing section 9 of Act No. 166, Pub. Acts 1917.    Section 27 of Act No. 166, providing that the former board of education of a district coming under the act shall function until a new board shall be elected and qualified, is not applicable to the situation at bar, for the reason that the east side district is not hereby accepting the provisions of such act, it having accepted them in 1919 as stated, nor can either of the former boards function for the reason that jurisdiction cannot be extended to cover the whole of the new district, and for the same reason, and because of the statute itself, there cannot be joint functioning by both boards.

The district is a going body organized but without a board.    It is entitled to one.    Doubts of the validity of the statute should be resolved, if possible, in its

favor.    We think the legislature intended that the offices in this case be treated as vacant and that section 20 of Act No. 166 provides for filling such vacancies. The section provides that if "all of the offices of the members of the board shall become vacant" the clerk of the city shall call a special election "for said district." The legislature must have intended the word "call," as used, to have the meaning of both call and hold. To authorize notices of election without providing for holding an election would be idle. The legislature did not intend to do an idle thing. The district without a board has no one by whom it may act. It was necessary in such case that the legislature designate some agent to act for it. It designated the person, the city clerk. He acts *ex-officio* as the agent of the district to bring about such election. He is authorized to do in that regard all acts, under the law, necessary to accomplish the result—the election of a board for the district. He is authorized to take any and all such action relative to notices, ballots, appointment of boards and inspectors, determination of precincts, administering oaths, canvassing, certification, etc., as a board of education of the district, or any member or agent thereof, might do in such case. On the faith and credit of the district he may incur indebtedness for the actual and necessary cost of such election, and he may issue evidence or evidences of such indebtedness. When a board of education shall have been elected and qualified, his agency for the occasion will be at an end.

"3. That the annual school election for the election of members of the board of education of the union school district of the city of Saginaw, as fixed by the local act under which said district is organized, is held on the first Monday in June, and under Act No. 166, governing the school district of Saginaw, east side, the biennial school election for the selection of members of the board of education is held on the first

Monday in April of each odd year; that neither said Act No. 9, nor said Act No. 166, nor any other law of the State of Michigan, fixes the time when a general school election shall be held for the selection of a new board of education in a new consolidated school district."

This presents a difficult question. The statute does not in precise terms provide for the situation before us. Section 10 of Act No. 166:

"The regular annual school election in each school district of the third class shall be held at the time specified by the law in force in said district, when this law shall go into effect, but the time for holding such election may be changed to the first Monday in June of each year in any such school district, if a majority of the qualified school electors voting in said district voting thereon vote in favor of such change at a regular or special election at which the question of such change is properly submitted to the voters of said district. The members of the board of education in all school districts of the third class hereunder shall be elected at the regular annual school election."

The section above quoted, and other sections, speak of an annual election. But the act, as amended by Act No. 44, Pub. Acts 1921, in effect, requires an election every two years, a biennial election. Up to the time of consolidation and after accepting said Act No. 166, the east side district had held its elections biennially on the first Monday in April of each odd year, as it had done theretofore under Act No. 404, Local Acts 1903. The city of Saginaw holds a regular biennial election for the election of its elective officers on the first Monday in April in each odd year.

The west side district before consolidation had held its elections annually on the first Monday in June, as provided by the act which created it. The new district comes under Act No. 166 by way of consolidating under said Act No. 9. Act No. 166 takes effect in the new district when consolidation is effected. Sec-

tion 10 provides, in effect, that the regular biennial election in the new district, of the third class, shall be held at the time "specified by law in force in the district when this law shall go into effect."

Of this the defense says:

"No regular annual school election has ever been held in this new district, and no date is fixed for the same in Act No. 9 or in Act No. 166. The election can not be held at the time of the election of the old districts, because the date of the election in each of the old districts is at a different time."

And also says that if we fix a day for election in the new district we must "read into the act provisions that the legislature left out."

The record as briefed presents a case not of failure of the act to fix any date of election, but of fixing two conflicting dates. This conflict does not mean, necessarily, that the act is inoperative and void. It is the duty of this court to construe it, under familiar rules, ascertaining, if possible, the legislative purpose, and giving it effect. If the purpose is not to be found under such principle, this court is authorized, to be rid of the conflict, to employ certain well known arbitrary rules of construction to the end that though a conflicting provision be lost, the act itself may be saved. See cases cited, American Digests, and First and Second Decennial, Statutes, Key No. 207. We think the legislative purpose may be ascertained without resort to arbitrary rules.

Section 13 of the act permits the district, where the dates coincide, to join with the city in regular elections, and by one election, and using the same agencies, to choose both the district and the municipal officers. The boundaries of the new district and the city are identical. The city is divided into election precincts. One election, rather than two elections, will save a considerable sum to the taxpayers. Section 10 of the act

gives the voters the right to change the date of election from the date contemplated by the act to the first Monday in June. The act contemplates that a date other than the first Monday in June is to be the date of election in the first instance. If the date of the west side district, first Monday in June, be fixed upon as the date of election in the new district, the voters will be denied the right of choice given by section 10 and the district may not join with the city in an election, and we run counter to the legislative intent.

If the other date, first Monday in April in each odd year, be determined as the date of election, the voters, if that date does not please them, may exercise the right of choice given by section 10 and select another date, and the district will have the right to join with the city in the election, and we satisfy legislative intent. We are impressed that the latter construction should be given.

"4. That said Act No. 9 is a local or special act, contains no referendum, and has never been submitted to or approved by the electors of the school districts of the city of Saginaw."

This is answered by *Burton* v. *Koch,* 184 Mich. 250.

We have considered all questions presented. The clerk will call and hold, as soon as practicable, an election as stated to elect seven members of a board of education to hold office until their successors shall have been elected and qualified. The first regular biennial election of the district will be the first Monday in April, 1927, unless the legislature or the voters of the district shall provide otherwise.

The writ will issue to the clerk, if necessary. No costs.

BIRD, C. J., and SHARPE, STEERE, FELLOWS, WIEST, and MCDONALD, JJ., concurred. SNOW, J., did not sit.